**FILED**

JUN - 4 2008
Jun 4 2008
MICHAEL W. DOBBINS
CLERK, U.S. DISTRICT COURT

**FIRM #40263**

# IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF ILLINOIS
### EASTERN DIVISION

| | |
|---|---|
| **FIREMAN'S FUND INSURANCE CO.** )<br><br>    **Plaintiff,** )<br><br>    - vs - )<br><br>**FOGO DE CHAO CHURRASCARIA** )<br>**(CHICAGO), LLC, and JOSEPH DI** )<br>**COSOLA, Individually and on behalf of a** )<br>**class** )<br><br>    **Defendants.** ) | **08CV3229**<br>**JUDGE LEINENWEBER**<br>**MAG. JUDGE NOLAN** |

## COMPLAINT FOR DECLARATORY JUDGMENT AND OTHER RELIEF

NOW COMES the Plaintiff, FIREMAN'S FUND INSURANCE COMPANY, by its

attorneys, WILSON & RYAN, and for its Complaint for Declaratory Judgment and Other Relief

against the Defendants, FOGO DE CHAO CHURRASCARIA (CHICAGO), LLC and JOSEPH

DI COSOLA, alleges the following:

### THE PARTIES

1.    Plaintiff, Fireman's Fund Insurance Company (hereinafter "FFIC"), is a

California Corporation with its principal place of business in Novato, California.

2.    Defendant, Fogo De Chao Churrascaria (Chicago) LLC (herein after "Fogo De

Chao"), is an Illinois limited liability company that owns and operates a restaurant at 661 N.

LaSalle Street in Chicago, Illinois.

3.    Defendant, Joseph Di Cosola (hereinafter "Di Cosola"), on information and belief

is a resident of this District.

## JURISDICTION

4.    The jurisdiction of this Court is based upon 28 U.S.C. § 1332, in that there is complete diversity of citizenship between the Plaintiff and the Defendants, and the amount in controversy exceeds the sum of $75,000, exclusive of interest and costs, in this action seeking a declaration of no coverage for the matter styled Di Cosola v. Fogo De Chao Churrascaria (Chicago), LLC, Case No. 07-C-6750 and pending in the United States District Court for the Northern District of Illinois ("Di Cosola Litigation").

5.    This matter is brought pursuant to the Declaratory Judgment Act 28 U.S.C. § 2201 *et seq.* because an actual controversy exists between FFIC and Fogo De Chao with respect to coverage for the Di Cosola Litigation under certain insurance policies issued by FFIC to Fogo De Chao, including whether FFIC has a duty to defend or indemnify Fogo De Chao in regards to the Di Cosola Litigation.

6.    Venue is premised upon 28 U.S.C. § 1391, as the Defendants are residents of this District.

## THE UNDERLYING DI COSOLA LITIGATION

7.    On February 17, 2007, April 21, 2007 and July 23, 2007, Di Cosola allegedly received computer-generated receipts from Fogo De Chao which displayed Di Cosola's American Express card expiration date.

8.    On or about November 30, 2007, Di Cosola filed a class action complaint in the United States District Court for the Northern District of Illinois, styled Di Cosola v. Fogo De Chao Churrascaria (Chicago), LLC, Case No. 07-C-6750.  A true and correct copy of the Complaint – Class Action is attached hereto, made a part hereof, as Exhibit A.

9.    Di Cosola alleges violation of Fair Credit Reporting Act ("FRCA"), 15 U.S.C.

§1681 *et seq.*, as amended by the Fair and Accurate Credit Transaction Act of 2003 ("FACTA"

or "the Act"), which prohibits a merchant from issuing an electronically printed receipt at the

point of sale or transaction which receipt displays more than the last 5 digits of the customer's

credit card or debit card number or the expiration date of the person's credit card or debt card or

both.  See Exhibit A.

10.    Di Cosola seeks damages pursuant to Section 1681n of FACTA, which provides

in pertinent part that a person that commits a "willful" violation of the Act is subject to actual

damages sustained by the consumer as a result of the failure, or damages of not less than $100

and not more than $1,000.  In the Di Cosola Litigation, Di Cosola requests a judgment in favor

of Di Cosola and the class members including: (1) statutory damages of $100 to $1,000 per

violation; (2) attorney fees, litigation expenses and costs; and (c) other the further relief,

including punitive damages.

11.    Fogo De Chao has tendered the Di Cosola Litigation to FFIC demanding that

FFIC provide it with a defense for the Di Cosola Litigation.  FFIC has denied any obligation to

provide a defense or indemnity with respect to the Di Cosola Litigation.

## THE FFIC POLICIES

12.    FFIC issued Portfolio Policy No. MZX 80869907 to Fogo De Chao Churrascaria

(Holdings), LLC, for the policy period February 15, 2007 to February 15, 2008 ("Primary

Policy").  Fogo De Chao Churrascaria (Chicago) LLC is a Named Insured.  A copy of the

pertinent sections of the Primary Policy is attached as Exhibit B.

13.    Fireman's Fund Insurance Company issued The Fund Umbrella Policy No. XAU-

000-9908-9328 to the Named Insured, Fogo De Chao Churrascaria for the policy period

3

February 15, 2007 to February 15, 2008 ("The Fund Policy").  A copy of the pertinent sections

of the Fund Policy is attached as Exhibit C.

## COUNT I
### (Declaratory Judgment – Primary Policy – No Allegation of Bodily Injury Property Damage or Personal and Advertising Injury)

14.     Plaintiff realleges the allegations in paragraphs 1 to 13 as if fully set forth herein.

15.     In pertinent part, the FFIC Primary Policy contains the following Insuring

Agreements:

**Section I - Coverages**

**Coverage A Bodily Injury and Property Damage Liability**

1.     **Insuring Agreement**

    a.     We will pay those sums that the insured becomes legally obligated to pay as damages because of **bodily injury** or **property damage** to which this insurance applies.  We will have the right and duty to defend the insured against any **suit** seeking those damages. However, we will have no duty to defend the insured against any **suit** seeking damages for **bodily injury** or **property damage** to which this insurance does not apply.  We may at our discretion investigate any **occurrence** and settle any claim or **suit** that may result.

* * *

**Coverage B Personal and Advertising Injury Liability**

1.     **Insuring Agreement**

    a.     We will pay those sums that the insured becomes legally obligated to pay as damages because of **personal and advertising injury** to which this insurance applies.  We will have the right and duty to defend the insured against any **suit** seeking those damages. However, we will have no duty to defend the insured against any **suit** seeking damages for **personal and advertising injury** to which this insurance does not apply.  We may, at our discretion, investigate any offense and settle any claims or **suit** that may result. But:

(1)     The amount we will pay for damages is limited as described in Section III – Limits of Insurance; and

(2)     Our right and duty to defend end when we have used up the applicable limit of insurance in the payment of judgments or settlements under Coverage A or B or medical expenses under Coverage C.

No other obligation or liability to pay sums or perform acts or services is covered unless explicitly provided for under Supplementary Payments – Coverage A and B.

b.     This insurance applies to **personal injury and advertising injury** caused by an offense arising out of your business but only if the offense was committed in the **coverage territory** during the policy period.

16.     The FFIC Primary Policy contains the following definitions which provide in pertinent part:

**Bodily injury** means bodily injury, sickness or disease sustained by a person, including death or mental anguish resulting from any of these at any time. Mental anguish means any type of mental or emotional illness or disease.

**Occurrence** means an accident, including continuous or repeated exposure to substantially the same general harmful conditions.

**Personal and advertising injury** means injury, including consequential **bodily injury**, arising out of one or more of the following offenses:

a.     False arrest, detention or imprisonment;

b.     Malicious prosecution;

c.     The wrongful eviction from, wrongful entry into, or invasion of the right of private occupancy of a room, dwelling or premises that a person occupies, committed by or on behalf of its owner, landlord or lessor;

d.     Oral or written publication, in any manner, of material that slanders or libels a person or organization or disparages a person's or organization's goods, products or services;

e.   Oral or written publication, in any manner, of material that violates a person's right of privacy;

f.   The use of another's advertising idea in your **advertisement**; or

g.   Infringing upon another's copyright, trade dress or slogan in your **advertisement.**

h.   **Discrimination**

**Property Damage** means:

a.   Physical injury to tangible property, including all resulting loss of use of that property. All such loss of use shall be deemed to occur at the time of the physical injury that caused it; or

b.   Loss of use of tangible property that is not physically injured. All such loss of use shall be deemed to occur at the time of the **occurrence** that caused it.

17.   The claims against Fogo De Chao in the Di Cosola Litigation do not allege or seek damages because of "bodily injury" or "property damage" caused by an "occurrence" taking place during the policy period as those terms are defined in the FFIC Primary Policy.

18.   The claims against Fogo De Chao in the Di Cosola Litigation do not allege or seek damages because of "personal and adverting injury" as that term is defined in the FFIC Primary Policy.

19.   FFIC has no duty to defend or indemnify Fogo De Chao with respect to the Di Cosola Litigation because the complaint does not seek damages because of "bodily injury" or "property damage" caused by an "occurrence" as defined in the Primary Policy, and the complaint does not seek damages because of "personal or advertising injury" as defined in the Primary Policy.

## COUNT II
### (Declaratory Judgment – The Fund Policy – No Allegation of Bodily Injury Property Damage or Personal and Advertising Injury)

20.    Plaintiff realleges the allegations in paragraphs 1 to 19 as if fully set forth herein.

21.    In pertinent part The Fund Policy contains the following Insuring Agreements:

**A.    COVERAGE A – INSURING AGREEMENT**

1.    We will pay on behalf of any **Insured** those sums in excess of **Primary Insurance** that any **Insured** becomes legally obligated to pay as damages or a **Covered Pollution Cost or Expense** provided that such damages and **Covered Pollution Cost or Expense:**

   a.    Are covered by **Primary Insurance;**

* * *

**A.    COVERAGE B – INSURING AGREEMENT**

1.    We will pay on behalf of any **Insured** those sums that any **Insured:**

   a.    Becomes legally obligated to pay as damages because of **Bodily Injury** or **Property Damage,** but only if:

      (1)    The **Bodily Injury** or **Property Damage** occurs during our Policy Period;

      (2)    The **Bodily Injury** or **Property Damage** is caused by an **Occurrence;**

* * *

   b.    Becomes legally obligated to pay as damages because of **Personal and Advertising Injury** but only if;

      (1)    Caused by an offense arising out of your business; and

      (2)    The offense was committed during our Policy Period.

* * *

2.    Coverage B does not apply to any claim or **Suit:**

a.  Which is covered by **Primary Insurance** or Coverage A of this policy; or

b.  Which would have been covered by **Primary Insurance** or Coverage A of this policy except for the exhaustion of the limits of such insurance.

* * *

**B**  **COVERAGE B –WHEN WE WILL HAVE A DUTY TO DEFEND**

1.  We will have the right and duty to defend any **Insured** against any **Suit**, seeking damages to which Coverage B applies, but only:

a.  If Coverage A or **Primary Insurance** does not apply or owe a duty of defense against such a **Suit**; and

b.  If no **Other Insurance** affording a defense or indemnity against such a **Suit** is available to any **Insured**.

We will pay only those defense expenses we incur.

22.  The Fund Policy contains the following definitions which provide in pertinent part:

**D.**  **BODILY INJURY** under Coverage B, means bodily injury, sickness or disease sustained by a person including death or mental anguish resulting from any of these at any time.  Mental anguish means any type of mental or emotion illness or disease.

**L.**  **OCCURRENCE**

* * *

2.  Under Coverage B, means an accident, including continuous or repeated exposure to substantially the same general harmful conditions.  With respect to **Personal and Advertising Injury**, the term means an offense which is causes such injury.

**N.**  **PERSONAL AND ADVERTISING INJURY** under Coverage B, means injury, including consequential **Bodily Injury**, arising out of one or more of the following offenses:

1.  False arrest, detention or imprisonment;

2.   Malicious prosecution or abuse of process;

3.   The wrongful eviction from, wrongful entry into, or invasion of the right of private occupancy of a room, dwelling or premises that a person occupies, committed by or on behalf of its owner, landlord or lessor;

4.   Oral or written publication, in any manner, of material that;

    a.   Slanders or libels a person or organization;

    b.   Disparages a person's or organizations goods, products or services; or

    c.   Violates a person's right of privacy;

5.   The use of another's advertising idea in your **Advertisement**;

6.   Infringing upon another's copyright, trade dress or slogan in your **Advertisement**; or

7.   "Discrimination" when based solely on either disparate impact or vicarious liability (unless insurance thereof is prohibited by law). As used in this definition N, the term "discrimination" means the unlawful treatment of individuals based on race, color, religion, gender, age, or national origin.

S.   **PROPERTY DAMAGE** under Coverage B, means:

1.   Physical injury to tangible property, including all resulting loss of use of that property. All such loss of use shall be deemed to occur at the time of the physical injury that caused it; or

2.   Loss of use of tangible property that is not physically injured. All such loss of use shall be deemed to occur at the time of the **occurrence** that caused it.

23.   Because the claims against Fogo De Chao in the Di Cosola Litigation do not implicate coverage under the FFIC Primary Policy, there is no coverage under excess coverage provided by Coverage A of The Fund Policy.

24.   The claims against Fogo De Chao in the Di Cosola Litigation do not allege or seek damages because of "bodily injury" or "property damage" caused by an "occurrence"

taking place during the policy period as those terms are defined for purposes of Coverage B in The Fund Policy.

25.    The claims against Fogo De Chao in the Di Cosola Litigation do not allege or seek damages because of "personal and adverting injury" as that term is defined for purposes of Coverage B in The Fund Policy.

26.    FFIC has no duty to defend or indemnify Fogo De Chao with respect to the Di Cosola Litigation under The Fund Policy.

**COUNT III**
**(Declaratory Judgment – Knowing Violation of**
**Rights of Another Exclusion)**

27.    Plaintiff realleges the allegations in paragraphs 1 to 26 as if fully set forth herein.

28.    The FFIC Primary Policy contains the following exclusion:

This insurance does not apply to:

a.    Knowing Violation of Rights of Another

**Personal and advertising injury** caused by or at the direction of the insured with the knowledge that the act would violate the rights of another and would inflict **personal and advertising injury.**

29.    The Fund Policy contains the following exclusion:

Coverage B of this policy does not apply:

* * *

2.    **PERSONAL AND ADVERTISING INJURY** – To **Personal and Advertising Injury:**

a.    Caused by or at the direction of the **Insured** with the knowledge that the act would violate the rights of another and would inflict **Personal and Advertising Injury.**

30.     Alternatively, the Knowing Violation of Rights of Another exclusions in the FFIC

Primary Policy and The Fund Policy preclude coverage for the Di Cosola Litigation.

**COUNT IV**
**(Declaratory Judgment – Violation of Statutes Exclusion)**

31.     Plaintiff realleges the allegations in paragraphs 1 to 30 as if fully set forth herein.

32.     The FFIC Primary Policy contains the following exclusion which provides in

pertinent part:

**EXCLUSION – VIOLATION OF STATUTES THAT GOVERN E-MAILS,
FAX, PHONE CALLS OR OTHER METHODS OF SENDING MATERIAL
OR INFORMATION – CG 00 67 03 05**

**This endorsement modifies insurance provided under the following:**

**Commercial General Liability Coverage Part**

* * *

B.     The following exclusion is added to Paragraph 2., **Exclusions** of **Section I
       – Coverage B –Personal and Advertising Injury Liability**:

2.     Exclusions

This insurance does not apply to:

**Distribution of Material in Violation of Statutes**

**Personal and advertising injury** arising directly or indirectly out
of any action or omission that violates or is alleged to violate:

a.     The Telephone Consumer Protection Act (TCPA),
       including any amendment of or addition to such law; or

b.     The CAN-SPAM Act of 2003, including any amendment of
       or addition to such law; or

c.     Any statute, ordinance or regulation, other than the TCPA
       or CAN-SPAM Act of 2003, that prohibits or limits the
       sending, transmitting, communicating or distribution of
       material or information.

11

33.    The Fund Policy contains the following exclusion:

**Violation of Statutes Exclusion (E-Mails, Fax, Phone Calls or Other Methods of Sending Material or Information) – 179033 12 04**
Policy Amendment – Umbrella Policy – Excess Liability Policy

The policy does not apply to any liability arising directly or indirectly out of any action or omission that violates or is alleged to violate:

A.    The Telephone Consumer Protection Act (TCPA), including any amendment of or addition to such law; or

B.    The CAN-SPAM Act of 2003, including any amendment of or addition to such law; or

C.    Any statute, ordinance or regulation, other than the TCPA or CAN-SPAM Act of 2003, that prohibits or limits the sending, transmitting, communicating or distribution of material or information.

All other terms and conditions of the policy remain unchanged.

34.    Alternatively, the Violation of Statutes exclusions in the FFIC Primary Policy and The Fund Policy preclude coverage for the Di Cosola Litigation, because the exclusions specifically preclude coverage for claims arising directly or indirectly out of any action or omission by Fogo De Chao that violates any statute that prohibits or limits the sending, transmitting, communicating or distribution of material or information, which includes the communicating and distribution of prohibited credit card information such as expiration dates and card numbers in excess of the last 5 digits.

## COUNT V
### (Declaratory Judgment – Publication Before the Policy Period)

35.    Plaintiff realleges the allegations in paragraphs 1 to 34 as if fully set forth herein.

36.    The FFIC Primary policy contains the following exclusion:

This insurance does not apply to:

a.    Material Published Prior to the Policy Period

**Personal and advertising injury** arising out of oral or written publication of material whose first publication took place before the beginning of the policy period.

37.     The Fund Policy contains the following exclusion:

Coverage B of this policy does not apply:

* * *

2.     **PERSONAL AND ADVERTISING INJURY** – To **Personal and Advertising Injury:**

c.     Arising out of oral or written publication of material whose first publication took place before the beginning of the Policy Period.

38.     Di Cosola seeks to bring a class action on behalf of all person to whom Fogo De Chao provided an electronically printed receipt at the point of sale or transaction, in a transaction occurring in Illinois on or after December 4, 2006, which displays (a) more than the last five digits of the person's credit card or debit card number, or (b) the expiration date of the person's credit or debit card or (c) both.

39.     FFIC issued the Primary Policy for the policy period February 15, 2007 to February 15, 2008.  FFIC also issued The Fund Policy for the policy period February 15, 2007 to February 15, 2008.

40.     Alternatively, the publication before the policy period exclusions in the FFIC Primary Policy and The Fund Policy preclude coverage in whole, or in part, for the Di Cosola Litigation, because the exclusions specifically preclude coverage for claims arising out of oral or written publication of material whose first publication took place before the beginning of the policy period.

13

WHEREFORE, Plaintiff, Fireman's Fund Insurance Company prays that this Court enter a judgment declaring:

(a)     That FFIC has no duty or obligation to provide a defense or indemnity to Fogo De Chao for the allegations in the Di Cosola Litigation under the FFIC Primary Policy and The Fund Policy;

(b)     That the Di Cosola Litigation does not allege or seek damages because of "bodily injury" or "property damage" caused by an "occurrence" taking place during the policy period as those terms are defined in the FFIC Primary Policy and in The Fund Policy;

(c)     That the Di Cosola Litigation does not allege or seek damages because of "personal or advertising injury" as that term is defined in the FFIC Primary Policy and in The Fund Policy;

(d)     Alternatively, that coverage for the claims in the Di Cosola Litigation are precluded by the Knowing Violation of Rights of Another exclusions in the FFIC Primary Policy and The Fund Policy;

(e)     Alternatively, that coverage for the claims in the Di Cosola Litigation are precluded by the Violations of Statutes exclusions in the FFIC Primary Policy and The Fund Policy;

(f)     Alternatively, that coverage for the claims in the Di Cosola Litigation are precluded by the publication before the policy period exclusions in the FFIC Primary Policy and The Fund Policy;

(g)     Grant such other relief as this Court deems just and proper under the evidence and circumstances.

14

Dated this 4nd day of June, 2008.    Respectfully submitted,

Daniel V. Marsalli (ARDC No. 6196604)
**WILSON & RYAN**
33 West Monroe Street
Suite 1530
Chicago, IL  60603
(312) 629-2000

Attorneys for: FIREMAN'S FUND INSURANCE
COMPANY

L:\12893\2008-06-02_FogoDeChao_Complaint.doc

15

# EXHIBIT A

**FILED**

**NOVEMBER 30, 2007**
MICHAEL W. DOBBINS
CLERK, U.S. DISTRICT COURT

## IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF ILLINOIS
## EASTERN DIVISION

| | | |
|---|---|---|
| JOSEPH DI COSOLA,<br>Individually and on behalf of a class, | ) ) ) | |
| Plaintiff, | ) ) | Case No. |
| v. | ) ) | **07 C 6750** |
| FOGO DE CHAO CHURRASCARIA<br>(CHICAGO), LLC, | ) ) ) | **JUDGE MAROVICH** |
| Defendant. | ) ) | **MAGISTRATE JUDGE SCHENKIER** |

### COMPLAINT – CLASS ACTION

NOW COMES the Plaintiff, Joseph DiCosola, for himself and on behalf of a class, by and through his attorneys, Anthony G. Barone and David M. Jenkins of Barone & Jenkins, P.C., and hereby complains of the Defendant, Fogo De Chao Churrascaria (Chicago), LLC, as follows:

### INTRODUCTION

1.    Plaintiff Joseph DiCosola brings this action to secure redress for the violation by Fogo De Chao Churrascaria (Chicago), LLC, of the Fair and Accurate Credit Transactions Act ("FACTA") amendment to the Fair Credit Reporting Act ("FCRA").

2.    One provision of FACTA, codified as 15 U.S.C. §1681c(g), provides that:

> [N]o person that accepts credit cards or debit cards for the transaction of business shall print more than the last 5 digits of the card number or the expiration date upon any receipt provided to the cardholder at the point of sale or transaction.

3.    Federal courts have concluded that section 1681c(g) is "not ambiguous," and that it "expressly prohibits printing more than the last five digits of the credit/debit

card numbers and also prohibits printing the card's expiration date." <u>Pirian v. In-N-Out</u> <u>Burgers.</u> 06-1251, 2007 U.S. Dist. LEXIS 25384, *8 (C.D.Cal. Apr. 5, 2007).

4.    The purpose of this "truncation requirement" is to prevent identity theft.

5.    One common modus operandi of identity thieves is to obtain credit card receipts that are lost or discarded, or through theft, and use the information on them to engage in transactions.

6.    On information and belief, it is possible for sophisticated identity thieves to replicate a credit card number using the expiration date and the last four digits of the card number, or it makes it easier for identity thieves to obtain sufficient information to use another's credit card.

7.    The expiration date is generally necessary for misuse of the card number.

8.    The FACTA amendment prohibits merchants who accept credit cards and debit cards from issuing electronically-generated receipts that display the expiration date or that display more than the last five digits of the card number.

9.    The law gave merchants who accept credit cards and/or debit cards up to three years to comply with its requirements, requiring full compliance with its provisions no later than December 4, 2006.

10.    As set forth more fully below, Defendant has willfully violated this law because its conduct was either willful, knowing, or reckless, and Defendant failed to protect Plaintiff and others similarly situated against identity theft and credit card and debit card fraud by failing to comply with the truncation requirement by including expiration dates on credit card receipts.

11.    Plaintiff brings this action against Defendant based on Defendant's violation of 15 U.S.C. §§1681 *et seq.* Plaintiff seeks statutory damages, attorneys fees, costs, and such other relief as the Court deems proper, including punitive damages.

### JURISDICTION AND VENUE

12.    This Court has subject matter jurisdiction under 28 U.S.C. §1331 and 15 U.S.C. §1681p.

13.    Venue in this district is proper because Defendant Fogo De Chao, does business here.

### PARTIES

14.    Plaintiff, Joseph DiCosola, is a resident of this district.

15.    Defendant Fogo De Chao Churrascaria (Chicago), LLC (hereinafter, "Fogo De Chao") is an Illinois limited liability company which owns and operates a restaurant at 661 N. LaSalle St., Chicago, Illinois 60610.

16.    Defendant Fogo De Chao is a "person that accepts credit cards or debit cards for the transaction of business" within the meaning of FACTA.

### FACTS

17.    On February 17, 2007, April 21, 2007, and July 23, 2007, Plaintiff received from Fogo De Chao a computer-generated cash register receipt which displayed Plaintiff's American Express card expiration date.

18.    On information and belief, the expiration date information, which is private, is published to and/or made available for viewing by third-parties by virtue of its placement on the receipt.

3

## CLASS ALLEGATIONS

19.    Plaintiff brings this action on behalf of a class pursuant to Fed.R.Civ.P.23(a) and (b)(3).

20.    The class is defined as all persons to whom Fogo De Chao provided an electronically printed receipt at the point of sale or transaction, in a transaction occurring in Illinois after December 4, 2006, which receipt displays (a) more than the last five digits of the person's credit card or debit card number, or (b) the expiration date of the person's credit or debit card or (c) both.

21.    The class is so numerous that joinder of all individual members in one action would be impracticable.

22.    There are well over 400 persons to whom Fogo De Chao provided an electronically printed receipt at the point of sale or transaction, in a transaction occurring in Illinois after December 4, 2006, which receipt displays (a) more than the last five digits of the person's credit card or debit card number, or (b) the expiration date of the person's credit or debit card or (c) both.

23.    Plaintiff's claims are typical of the claims of the class members. All are based on the same legal theories and arise form the same unlawful and willful conduct.

24.    There are common questions of fact and law affecting members of the class, which common questions predominate over questions which may affect individual members. These include the following;

  a.    Whether Defendant had a practice of providing customers with a sales or transaction receipt which failed to comply with the truncation requirement.

  b.    Whether Defendant thereby violated FACTA.

  c.    Whether Defendant's conduct was willful, knowing, or reckless.

4

25.     Plaintiff will fairly and adequately represent the class members. Plaintiff has no interests that conflict with the interests of the class members. Plaintiff has retained experienced counsel.

26.     A class action is superior to other available means for the fair and efficient adjudication of the claims of the class members. Individual actions are not economically feasible.

## VIOLATION ALLEGED

27.     Defendant violated 15 U.S.C. §1681c(g)(1), which provides that:

[N]o person that accepts credit cards or debit cards for the transaction of business shall print more than the last five digits of the card number or the expiration date upon any receipt provided to the cardholder at the point of sale or transactions.

28.     With respect to machines that were first put into use after January 1, 2005, 15 U.S.C.§1681c(g)(3)(B) required immediate compliance with the provisions of 15 U.S.C.§1681c(g)(1).

29.     With respect to machines that were in use before January 1, 2005, 15 U.S.C.§1681c(g)(3)(B) required compliance with the provisions of 15 U.S.C. §1681c(g)(1) on or after December 4, 2006.

30.     Defendant accepts credit cards and/or debit cards in the course of transacting business with persons such as plaintiff and the class members. In transacting such business, Defendant uses cash registers and/or other machines or devices that electronically print receipts for credit card and/or debit card transactions.

31.     After the effective date of the statute, Defendant, at the point of sale or transaction, provided Plaintiff and each class member with one or more electronically

printed receipts on each of which Defendant failed to comply with the truncation requirement or the requirement that expiration dates be omitted.

32.    FACTA was enacted in 2003 and gave merchants who accept credit card and/or debit cards up to three years to comply with its requirements, requiring compliance for all machines no later than December 4, 2006.

33.    On information and belief, Defendant knew of the truncation requirement and prohibition on the printing of expiration dates or was reckless in its failure to follow those requirements in light of the information readily available to it.

34.    On information and belief, VISA, MasterCard, the PCI Security Standards Council—a consortium founded by VISA, MasterCard, Discover, American Express and JCB—companies that sell cash registers and other devices for the processing of credit or debit card payments, and other entities informed Defendant about FACTA, including its specific requirements concerning the truncation of credit card and debit card numbers and prohibition on the printing of expiration dates, and Defendant's need to comply with same.

35.    The requirement was widely publicized among retailers.

36.    For example, in response to earlier state legislation enacting similar truncation requirements, on March 6, 2003, the CEO of Visa USA, Carl Pascarella, explained that "Today, I am proud to announce an additional measure to combat identity theft and protect consumers. Our new receipt truncation policy will soon limit cardholder information on receipts to the last four digits of their accounts. The card's expiration date will be eliminated from receipts altogether….The first phase of this new policy goes into effect July 1, 2003 for all new terminals….." "Visa USA Announces Account Truncation

Initiative to Protect Consumers from ID Theft; Visa CEO Announces New Initiative at Press Conference With Sen. Dianne Feinstein," PR Newswire, March 6, 2003.

37.    Within 24 hours, MasterCard and American Express announced they were imposing similar requirements.

38.    The card issuing organizations proceeded to require compliance with FACTA by contract, in advance of FACTA's mandatory compliance date. For example, the August 12, 2006 edition of "Rules for Visa Merchants" (p.62), which is distributed to and binding upon all merchants that accept Visa cards, expressly requires that "only the last four digits of an account number should be printed on the customer's copy of the receipt: and "the expiration date should not appear at all." These statements were accompanied by a picture of a receipt showing precisely what had to be removed. VISA required complete compliance by July 1, 2006, five months ahead of the statutory deadline.

39.    Defendant accepts Visa card and MasterCard and on information and belief, is a party to a contract requiring compliance with the above-quoted requirement.

40.    American Express has a manual that contains a similar depiction of what information must be suppressed.

41.    Most of Defendant's business peers and competitors readily brought their credit card and debit card receipt printing process into compliance with FACTA by programming their card machines and devices to comply with the truncation requirement. Defendant could have readily done the same.

42.    Defendant willfully disregarded FACTA's requirements in that its violation was either willfully, knowingly, or recklessly done, and continued to use cash register or other machines or devices that print receipts in violation of FACTA.

7

43.    The FCRA, 15 U.S.C. §1681n, provides:

§1681n. Civil liability for willful noncompliance

(a) In general, Any person who willfully fails to comply with any requirement
Imposed under this title [15 USC §§1681 et seq.] with respect to any consumer is
liable to that consumer in an amount equal to the sum of--

    (1)

            (A) any actual damages sustained by the consumer as a result
            of the failure or damages of not less than $100 and not more
            than $1,000; or

            (B) in the case of liability of a natural person for obtaining a
            consumer report under false pretenses or knowingly without a
            permissible purpose, actual damages sustained by the
            consumer as a result of the failure or $1,000, whichever is
            greater;

    (2)    such amount of punitive damages as the court may allow; and

    (3)    in the case of any successful action to enforce any liability under
            this section, the costs of the action together with reasonable
            attorney's fees as determined by the court....

44.    The FCRA, 15 U.S.C. §1681p, provides:

§1681p. Jurisdiction of courts; limitation of actions

An action to enforce any liability created under this title [15 USCS §§1681 et
seq.] may be brought in any appropriate United States district court, without
regard to the amount in controversy, or in any other court of competent
jurisdiction, not later than the earlier of—

    (1) 2 years after the date of discovery by the plaintiff of the violation that
    is the basis for such liability; or

    (2) 5 years after the date on which the violation that is the basis for such
    liability occurs.

WHEREFORE, the Plaintiff requests that the Court enter judgment in favor of

Plaintiff and the class members and against Defendant as follows:

    a.    For statutory damages of $100 to $1,000 per violation;

b.    For attorney's fees, litigation expenses and costs;

c.    For such other and further relief as the Court may deem proper,

including punitive damages.

Respectfully submitted,

JOSEPH DI COSOLA

By: _____
        One of His attorneys

Anthony G. Barone (ARDC No. 06196315)
David M. Jenkins (ARDC No. 6211230)
Barone & Jenkins, P.C.
635 Butterfield Road, Suite 145
Oakbrook Terrance, Illinois 60181
630/472-0037

Of Counsel
Marvin L. Frank
Lawrence D. McCabe
Murray, Frank & Sailer, LLP
275 Madison Avenue, Suite 801
New York, NY 10016
212/682-1818

**JURY DEMAND**

Plaintiff demands trial by jury.

Respectfully submitted,

JOSEPH DI COSOLA

By: _____
        One of His attorneys

9

## NOTICE OF LIEN

Please be advised that we claim a lien upon any recovery herein for 1/3 or such amount as a court awards.

David M. Jenkins

Anthony G. Barone (ARDC No. 06196315)
David M. Jenkins (ARDC No. 6211230)
Barone & Jenkins, P.C.
635 Butterfield Road, Suite 145
Oakbrook Terrance, Illinois 60181
630/472-0037

# EXHIBIT B



**Fireman's Fund**

| POLICY NUMBER | Previous Policy Numbers | Coverage for sections |
|---|---|---|

POLICY NUMBER
S 67 MZX 80869907

Previous Policy Numbers
NEW

Coverage for sections
other than WORKERS'
COMPENSATION is provided
in the following Company:
  FIREMAN'S FUND
  INSURANCE COMPANY
  NOVATO, CA  94998
A STOCK INSURANCE CO. (01)

PORTFOLIO POLICY (R)

**GENERAL DECLARATIONS**

                                        Risk ID.  J25/

Named Insured and Mailing Address

   **FOGO DE CHAO CHURRASCARIA (HOLDINGS), LLC**
(Named Insureds are continued following the Premium Summary section of
 these General Declarations)

   **15028 BELTLINE DRIVE**
   **ADDISON**          **TX  75001**

Producer Name and Address

   **WACHOVIA INSURANCE SERVICES**

   **5956 SHERRY LANE, STE 2000**
   **DALLAS**            **TX 75225**

The Named Insured is a(n) CORPORATION

Business or Operations of the Named Insured:  RESTAURANT

---

The insurance provided by this policy consists of the following coverage
form(s). The premium may be subject to adjustment. In return for payment of
the premium and subject to all the terms of this policy, we agree with you to
provide the insurance as stated in this policy.

        **PROPERTY COVERAGES**
        **GENERAL LIABILITY COVERAGES - OCCURRENCE**
        **CRIME COVERAGES**
        **INLAND MARINE COVERAGES**
        **AUTO INSURANCE COVERAGES**

        Policy Period    (For above coverages)
           **INCEPTION DATE    02-15-07**
           **EXPIRATION DATE   02-15-08**
        Beginning and Ending at 12:01 A.M., Standard Time
              at the address of the insured

If this policy includes the "Business Auto Coverage Form", and/or the "Truckers
Coverage Form" and/or the "Garage Coverage Form", each such form shall
be construed independent of any other  such form, and none of the terms or
conditions contained in one such form  shall be construed as being applicable
to any other such form.
Premium is included in the premium summary below.

                                                           GD - 1

POLICY NUMBER S 67 MZX 80869907
PORTFOLIO POLICY (R)
Named Insured
    FOGO DE CHAO CHURRASCARIA

GENERAL DECLARATIONS Continued

IN RETURN FOR PAYMENT OF THE PREMIUM, AND SUBJECT TO ALL THE TERMS OF THIS
POLICY, WE AGREE WITH YOU TO PROVIDE THE INSURANCE AS STATED IN THIS POLICY.

PREMIUM SUMMARY:

| | |
|---|---|
| **Estimated Annual Premium** | $195,772.06 |
| **Premium Due at Inception** | $195,772.06 |

| | |
|---|---|
| **Terrorism Risk Insurance Act ("The Act") - Certified Acts Coverage - All Coverages Subject to the Act Excl WC and Umbrella - Covered** | $5,181 |
| Includes MINNESOTA Fireman's Relief Association Charge of | $29.20 |
| Includes TX Vol Fire Dept Surcharge of | $72.86 |

This Policy may be subject to Premium Adjustment per Policy Terms.

**A $10 INSTALLMENT FEE WILL BE ADDED TO EACH INSTALLMENT INVOICE.**

Tentative Premium Provision shall be applicable to:

        PROPERTY

(Named Insured continued)

        **FOGO DE CHAO CHURRASCARIA (TEXAS GP) LLC**
        **FOGO DE CHAO CHURRASCARIA (DALLAS) LLP**
        **FOGO DE CHAO CHURRASCARIA (HOUSTON) LLP**
        **VARZEA ALEGRE (DALLAS) LLP**
        **ADDISON FUNDING LLC**
        **VARZEA ALEGRE II (HOUSTON) LLP**
        **WESTHEIMER FUNDING LLC**
        **FOGO DE CHAO CHURRASCARIA (ATLANTA) LLC**
        **3215 FUNDING LLC**
        **FOGO DE CHAO CHURRASCARIA (CHICAGO) LLC**
        **FOGO DE CHAO CHURRASCARIA (CALIFORNIA) LLC**
        **FOGO DE CHAO CHURRASCARIA (WASHINGTON, D.C.) LLC**
        **FOGO DE CHAO CHURRASCARIA (MINNEAPOLIS) LLC**
        **FOGO DE CHAO CHURRASCARIA (PHILADELPHIA) LLC**
        **FOGO DE CHAO (BALTIMORE) LLC**

POLICY NUMBER  S 67 MZX 80869907
PORTFOLIO POLICY (R)
Named Insured
    FOGO DE CHAO CHURRASCARIA

GENERAL DECLARATIONS Continued


LOCATIONS OF PREMISES--Applicable to Coverages specified in these Declarations
(Not applicable to WORKERS' COMPENSATION AND EMPLOYERS' LIABILITY POLICY)

| LOC. | | | | | |
|------|------------------------------|----|-------|---------------------|--------|
| 001 | 4300 BELTLINE ROAD<br>ADDISON | TX | 75001 | DALLAS | (CNTY) |
| 002 | 15028 BELTLINE ROAD<br>ADDISON | TX | 75001 | DALLAS | (CNTY) |
| 003 | 8250 WESTHEIMER ROAD<br>HOUSTON | TX | 77063 | HARRIS | (CNTY) |
| 004 | 8200 WESTHEIMER ROAD<br>HOUSTON | TX | 77063 | HARRIS | (CNTY) |
| 005 | 3101 PEIDMONT ROAD<br>FAIRBURN | GA | 30213 | FULTON | (CNTY) |
| 006 | 661 NORTH LASALLE STREET<br>CHICAGO | IL | 60610 | COOK | (CNTY) |
| 007 | 133 N LA CIENEGA BLVD<br>BEVERLY HILLS | CA | 90211 | LOS ANGELES | (CNTY) |
| 008 | 1101 PENNSYLVANIA AVE NW<br>WASHINGTON | DC | 20004 | DISTRICT OF COLUMBIA | (CNTY) |
| 009 | 645 HENNEPIN AVENUE<br>MINNEAPOLIS | MN | 55403 | HENNEPIN | (CNTY) |
| 010 | 1337 CHESTNUT STREET<br>PHILADELPHIA | PA | 19197 | PHILADELPHIA | (CNTY) |
| 011 | 600 E PRATT STREET<br>BALTIMORE | MD | 21202 | BALTIMORE CITY | (CNTY) |

GD - 3

POLICY NUMBER **8 67 MZX** 80869907
PORTFOLIO POLICY (R)
Named Insured
    FOGO DE CHAO CHURRASCARIA

GENERAL DECLARATIONS Continued

**FORMS ATTACHED AT INCEPTION**


**GENERAL PROVISIONS**

IL0003 11-85 CALCULATION OF PREMIUM (IL 00 03 11 85)
IL0017 11-98 REV  2 COMMON POLICY CONDITIONS (IL 00 17 11 98)
IL0021 05-04 NUCLEAR ENERGY LIABILITY EXCLUSION ENDORSEMENT (BROAD FORM)
             (IL 00 21 05 04)
IL0022 05-87 EFFECTIVE TIME CHANGES - REPLACEMENT OF 12 NOON
             (IL 00 22 05 87)
IL0103 07-02 CALIFORNIA CHANGES - ACTUAL CASH VALUE (IL 01 03 07 02)
IL0118 05-05 ILLINOIS CHANGES (IL 01 18 05 05)
IL0166 07-02 PENNSYLVANIA CHANGES - ACTUAL CASH VALUE (IL 01 66 07 02)
IL0168 09-92 TEXAS CHANGES - DUTIES (IL 01 68 09 92)
IL0171 09-92 TEXAS CHANGES - LOSS PAYMENT (IL 01 71 09 92)
IL0172 07-02 PENNSYLVANIA CHANGES (IL 01 72 07 02)
IL0245 09-03 MINNESOTA CHANGES - CANCELLATION AND NONRENEWAL
             (IL 02 45 09 03)
IL0246 07-02 PENNSYLVANIA CHANGES - CANCELLATION AND NONRENEWAL
             (IL 02 46 07 02)
IL0262 07-02 GEORGIA CHANGES - CANCELLATION AND NONRENEWAL (IL 02 62 07 02)
IL0270 11-04 CALIFORNIA CHANGES - CANCELLATION AND NONRENEWAL
             (IL 02 70 11 04)
IL0275 05-03 TEXAS CHANGES - CANCELLATION AND NONRENEWAL PROVISIONS FOR
             CASUALTY LINES AND COMMERCIAL PACKAGE POLICIES
             (IL 02 75 05 03)
IL0278 07-02 DISTRICT OF COLUMBIA CHANGES - CANCELLATION AND NONRENEWAL
             (IL 02 78 07 02)
IL0284 07-05 ILLINOIS CHANGES - CANCELLATION AND NONRENEWAL
             (IL 02 84 07 05)
IL0910 07-02 PENNSYLVANIA NOTICE (IL 09 10 07 02)
IL0910/HO291 01-81 PENNSYLVANIA NOTICE (IL 09 10/HO 291 01 81)
IL0935 07-02 EXCLUSION OF CERTAIN COMPUTER-RELATED LOSSES (IL 09 35 07 02)
IL1204 12-98 ILLINOIS POLICY CHANGES (IL 12 04 12 98)
141359 12-92 TEXAS CHANGES - CANCELLATION AND NON-RENEWAL MULTI PERIL
             POLICY (141359 12 92)
141360 12-92 TEXAS CHANGES - MULTI PERIL POLICY (141360 12 92)
145900 01-02 FUNGI LIMITATION ENDORSEMENT (145900 01 02)
145901TX 09-02 DETRIMENTAL CODE EXCLUSION (145901TX 09 02)
145909 07-03 TEXAS CHANGES ENDORSEMENT (145909 07 03)
145914 04-03 EXCLUSION OF ACTS OF BIOLOGICAL OR CHEMICAL TERRORISM
             (145914 04 03)
145916 09-03 CERTIFIED ACTS OF TERRORISM COVERAGE (145916 09 03)
145917 06-04 SILICA PARTICLES EXCLUSION (145917 06 04)
145917NH 05-04 SILICA PARTICLES EXCLUSION (145917 05 04)
145919 04-06 CONDITIONAL EXCLUSION OF TERRORISM INVOLVING NUCLEAR,
             BIOLOGICAL OR CHEMICAL TERRORISM
             (RELATING TO DISPOSITION OF FEDERAL TERRORISM RISK
             INSURANCE ACT OF 2002) (145919 04 06)

POLICY NUMBER  S 67 MZX 80869907
PORTFOLIO POLICY (R)
Named Insured
    FOGO DE CHAO CHURRASCARIA

GENERAL DECLARATIONS Continued

**FORMS ATTACHED AT INCEPTION**

### GENERAL PROVISIONS

145927 04-06 DISCLOSURE OF PREMIUM AND ESTIMATED PREMIUM FOR CERTIFIED ACTS
             OF TERRORISM COVERAGE
             (PURSUANT TO TERRORISM RISK INSURANCE ACT OF 2002)
             (145927 04 06)

### PROPERTY

CP0030 07-88 BUSINESS INCOME (AND EXTRA EXPENSE) COVERAGE FORM
             (CP 00 30 07 88)
CP0090 07-88 COMMERCIAL PROPERTY CONDITIONS (CP 00 90 07 88)
CP0108 08-02 MINNESOTA CHANGES (CP 01 08 08 02)
CP0131 12-00 GEORGIA CHANGES (CP 01 31 12 00)
CP0157 07-98 MINNESOTA CHANGES - COINSURANCE (CP 01 57 07 98)
CP0299 11-85 CANCELLATION CHANGES (CP 02 99 11 85)
CP1218 06-95 LOSS PAYABLE PROVISIONS (CP 12 18 06 95)
CP1531 07-88 ORDINANCE OR LAW - INCREASED PERIOD OF RESTORATION
             (CP 15 31 07 88)
CP9993 01-95 TENTATIVE RATE (CP 99 93 01 95)
IL0415 10-91 PROTECTIVE SAFEGUARDS (IL 04 15 10 91)
140413 06-84 VAL-U-GARD II ENDORSEMENT (140413-06-84)
141035 12-88 COMMERCIAL PROPERTY CAUSES OF LOSS FORM (141035 12-88)
141062 10-92 TEXAS AMENDATORY ENDORSEMENT (141062 10 92)
141072 02-93 WINDSTORM DEDUCTIBLE FORM (141072 02 93)
141073 05-93 PROPERTY-GARD AMENDATORY ENDORSEMENT (141073 05 93)
141074 08-93 CAUSE OF LOSS - FLOOD FORM (141074)
142000 12-88 REV  2 COMMERCIAL PROPERTY PROPERTY-GARD BUILDING AND PERSONAL
             PROPERTY COVERAGE FORM (142000 12 88)
143609 07-03 PROPERTY-GARD EQUIPMENT BREAKDOWN COVERAGE ENDORSEMENT
             (143609 07 03)
143623 06-05 CRISIS MANAGEMENT COVERAGE EXTENSION (143623 06 05)
143626 06-05 PROPERTY-GARD RESTAURANT PLUS EXTENSION ENDORSEMENT
             (143626 06 05)
145942 09-04 RESTAURANT WINE COLLECTION VALUATION ENDORSEMENT
             (145942 09 04)

### GENERAL LIABILITY

CG0001 12-04 COMMERCIAL GENERAL LIABILITY COVERAGE FORM (CG 00 01 12 04)
CG0033 12-04 LIQUOR LIABILITY COVERAGE (CG 00 33 12 04)
CG0067 03-05 EXCLUSION - VIOLATION OF E-MAIL, FAX, PHONE STATUTES
             (CG 00 67 03 05)
CG0103 03-02 TEXAS CHANGES-CONDITIONS REQUIRING NOTICE (CG 01 03 03 02)
CG0200 07-05 ILLINOIS CHANGES - CANCELLATION AND NONRENEWAL
             (CG 02 00 07 05)
CG2147 07-98 EMPLOYMENT - RELATED PRACTICES EXCLUSION (CG 21 47 07 98)
CG2167 12-04 FUNGI OR BACTERIA EXCLUSION (CG 21 67 12 04)

POLICY NUMBER **S 67 MZX 80869907**
PORTFOLIO POLICY (R)
Named Insured
    FOGO DE CHAO CHURRASCARIA

GENERAL DECLARATIONS Continued

**FORMS ATTACHED AT INCEPTION**

**GENERAL LIABILITY**

CG2407 01-96 PRODUCTS - COMPLETED OPERATIONS HAZARD REDEFINED
                (CG 24 07 01 96)
CG2504 03-97 DESIGNATED LOCATION(S) GENERAL AGGREGATE LIMIT
                (CG 25 04 03 97)
CG2605 07-98 MINNESOTA CHANGES (CG 26 05 07 98)
CG2907 08-00 MINNESOTA CHANGES - CANCELLATION AND NON-RENEWAL
                (CG 29 07 08 00)
CG3234 01-05 CALIFORNIA CHANGES (CG 32 34 01 05)
CG7093 12-92 REV COMPLETE ASBESTOS EXCLUSION (CG 70 93 12 92R)
CG7093PA 12-92 REV PENNSYLVANIA - COMPLETE ASBESTOS EXCLUSION
                (CG 70 93PA 12 92R)
CG7158 12-03 REV MULTICOVER (CG 71 58R 12 03)
CG7173 03-97 EXCLUSION - TEXAS AMENDMENT TO MULTICOVER (CG 71 73 03 97)
EB7000 12-97 EMPLOYEE BENEFITS ADMINISTRATION ERRORS AND OMISSIONS
                INSURANCE (EB 70 00 12 97)

**CRIME**

CR0021 03-00 COMMERCIAL CRIME COVERAGE FORM (LOSS SUSTAINED FORM)
                (CR 00 21 03 00)

**INLAND MARINE**

CM0112 09-00 TEXAS CHANGES (CM 01 12 09 00)
CM0117 09-04 MINNESOTA CHANGES (CM 01 17 09 04)
CM0142 12-00 GEORGIA CHANGES (CM 01 42 12 00)
CM0204 07-05 ILLINOIS CHANGES (CM 02 04 07 05)
CM7162 08-92 MINNESOTA AMENDATORY ENDORSEMENT (CM 71 62 08 92)
CM7195 12-94 TEXAS CHANGES (CM 71 95 12 94)
CM7199 03-95 ELECTRONIC DATA PROCESSING - DEBRIS REMOVAL - TEXAS
                (CM 71 99 03 95)
140559 12-86 REV CONDITIONS (140559 12 86R)
140866 02-86 REV DEBRIS AND POLLUTANT REMOVAL POLICY AMENDMENT
                (140866 02-86R)
140876 04-90 REV ELECTRONIC DATA PROCESSING COVERAGE FORM (140876-04-90R)
141731 06-84 AMENDATORY ENDORSEMENT ("CONCURRENT CAUSE") (141731-06-84)

**AUTOMOBILE**

CA0001 10-01 BUSINESS AUTO COVERAGE FORM (CA 00 01 10 01)
CA0051 12-04 CHANGES IN COVERAGE FORMS - MOBILE EQUIPMENT SUBJECT TO MOTOR
                VEHICLE INSURANCE LAWS (CA 00 51 12 04)
CA0109 10-04 GEORGIA CHANGES (CA 01 09 10 04)
CA0120 06-03 ILLINOIS CHANGES (CA 01 20 06 03)
CA0138 06-00 MINNESOTA CHANGES (CA 01 38 06 00)
CA0140 09-94 DISTRICT OF COLUMBIA CHANGES (CA 01 40 09 94)

POLICY NUMBER S 67 MZX 80869907
PORTFOLIO POLICY (R)
Named Insured
    FOGO DE CHAO CHURRASCARIA

GENERAL DECLARATIONS Continued

**FORMS ATTACHED AT INCEPTION**

### AUTOMOBILE

CA0143 05-05 CALIFORNIA CHANGES (CA 01 43 05 05)
CA0170 06-05 MARYLAND CHANGES (CA 01 70 06 05)
CA0180 09-97 PENNSYLVANIA CHANGES (CA 01 80 09 97)
CA0196 09-04 TEXAS CHANGES (CA 01 96 09 04)
CA0215 11-00 MARYLAND CANCELLATION CHANGES (CA 02 15 11 00)
CA0243 03-01 TEXAS CHANGES - CANCELLATION AND NON-RENEWAL (CA 02 43 03 01)
CA0263 05-97 DISTRICT OF COLUMBIA CHANGES-CANCELLATION AND NONRENEWAL
             (CA 02 63 05 97)
CA0270 08-94 ILLINOIS CHANGES - CANCELLATION AND NONRENEWAL
             (CA 02 70 08 94)
CA7003 01-87 EXPLANATION OF PREMIUM BASIS (CA 70 03 01 87)
CA7078 01-06 EXCLUSION OF TERRORISM INVOLVING NUCLEAR, BIOLOGICAL OR
             CHEMICAL TERRORISM (CA 70 78 01 06)
CA9937 10-01 GARAGEKEEPERS COVERAGE (CA 99 37 10 01)
CA9991 02-01 TEXAS CALCULATION OF PREMIUM (CA 99 91 02 01)

In Witness Whereof, this Company has executed and attested these presents, but
this policy shall not be valid unless counter-signed by an authorized Agent of
this Company.

Countersignature of Authorized Agent: _____
                                                                    Date 02/15/07

Producer WACHOVIA INSURANCE SERVICES
         5956 SHERRY LANE, STE 2000
         DALLAS              TX 75225
                                                        GD - 7

# GENERAL   LIABILITY

| | |
|---|---|
| General Liability | **GL** |

POLICY NUMBER **S 67 MZX 80869907**

NAMED INSURED
    FOGO DE CHAO CHURRASCARIA

    PORTFOLIO POLICY (R)

### GENERAL LIABILITY DECLARATIONS

Insurance is provided only for those Coverages, Limits of Liability and Endorsements shown below.

| Coverages | Limits of Liability |
|---|---|
| COMMERCIAL GENERAL LIABILITY COVERAGE PART | |
| GENERAL AGGREGATE LIMIT (Other Than Products – Completed Operations) | $2,000,000 |
| PRODUCTS - COMPLETED OPERATIONS AGGREGATE LIMIT | $2,000,000 |
| PERSONAL & ADVERTISING INJURY LIMIT | $1,000,000 |
| EACH OCCURRENCE LIMIT | $1,000,000 |
| DAMAGE TO PREMISES RENTED TO YOU LIMIT   ANY ONE PREMISES | $100,000 |
| MEDICAL EXPENSE LIMIT   ANY ONE PERSON | $5,000 |
| LIQUOR LIABILITY AGGREGATE LIMIT | $2,000,000 |
| LIQUOR LIABILITY EACH COMMON CAUSE | $1,000,000 |
| | |
| EMPLOYEE BENEFITS ADMINISTRATION ERRORS AND OMISSIONS INSURANCE | |
| AGGREGATE LIMIT | $1,000,000 |
| EACH EMPLOYEE LIMIT | $1,000,000 |

The audit period shall be ANNUAL

### GENERAL LIABILITY ENDORSEMENT(S)

PRODUCTS - COMPLETED OPERATIONS HAZARD REDEFINED (CG 24 07 01 96)

    Description of Premises and Operations:
        RESTAURANT

LIQUOR LIABILITY COVERAGE (CG 00 33 12 04)

EMPLOYMENT - RELATED PRACTICES EXCLUSION (CG 21 47 07 98)

GL - 1

POLICY NUMBER **S 67 MZX 80869907**

NAMED INSURED
    FOGO DE CHAO CHURRASCARIA

      PORTFOLIO POLICY (R)

### COMMERCIAL GENERAL LIABILITY DECLARATIONS (continued)

#### GENERAL LIABILITY ENDORSEMENT(S) (continued)

COMPLETE ASBESTOS EXCLUSION (CG 70 93 12 92R)

MULTICOVER (CG 71 58R 12 03)

EMPLOYEE BENEFITS ADMINISTRATION ERRORS AND OMISSIONS INSURANCE
(EB 70 00 12 97)

FUNGI OR BACTERIA EXCLUSION (CG 21 67 12 04)

EXCLUSION - VIOLATION OF E-MAIL, FAX, PHONE STATUTES
(CG 00 67 03 05)

#### SUPPLEMENTARY STATE ENDORSEMENT(S)

#### CALIFORNIA

CALIFORNIA CHANGES (CG 32 34 01 05)

#### ILLINOIS

ILLINOIS CHANGES - CANCELLATION AND NONRENEWAL (CG 02 00 07 05)

#### MINNESOTA

MINNESOTA CHANGES (CG 26 05 07 98)

MINNESOTA CHANGES - CANCELLATION AND NON-RENEWAL (CG 29 07 08 00)

#### PENNSYLVANIA

PENNSYLVANIA - COMPLETE ASBESTOS EXCLUSION (CG 70 93PA 12 92R)

#### TEXAS

TEXAS CHANGES-CONDITIONS REQUIRING NOTICE (CG 01 03 03 02)

EXCLUSION - TEXAS AMENDMENT TO MULTICOVER (CG 71 73 03 97)

DESIGNATED LOCATION(S) GENERAL AGGREGATE LIMIT
CG2504          0397

POLICY NUMBER **S 67 MZX 80869907**

NAMED INSURED
FOGO DE CHAO CHURRASCARIA

RATING PERIOD 02-15-07 TO 02-15-08

## GENERAL LIABILITY SCHEDULE

**Premise 01**
Location 001    4300 BELTLINE ROAD
ADDISON    TX  75001    DALLAS    (CNTY)

**Premise 02**
Location 002    15028 BELTLINE ROAD
ADDISON    TX  75001    DALLAS    (CNTY)

**Premise 03**
Location 003    8250 WESTHEIMER ROAD
HOUSTON    TX  77063    HARRIS    (CNTY)

**Premise 04**
Location 004    8200 WESTHEIMER ROAD
HOUSTON    TX  77063    HARRIS    (CNTY)

**Premise 05**
Location 005    3101 PEIDMONT ROAD
FAIRBURN    GA  30213    FULTON    (CNTY)

**Premise 06**
Location 006    661 NORTH LASALLE STREET
CHICAGO    IL  60610    COOK    (CNTY)

**Premise 07**
Location 007    133 N LA CIENEGA BLVD
BEVERLY HILLS    CA  90211    LOS ANGELES    (CNTY)

**Premise 08**
Location 008    1101 PENNSYLVANIA AVE NW
WASHINGTON    DC  20004    DISTRICT OF COLUMBIA  (CNTY)

**Premise 09**
Location 009    645 HENNEPIN AVENUE
MINNEAPOLIS    MN  55403    HENNEPIN    (CNTY)

**Premise 10**
Location 010    1337 CHESTNUT STREET
PHILADELPHIA    PA  19197    PHILADELPHIA    (CNTY)

**Premise 11**
Location 011    600 E PRATT STREET
BALTIMORE    MD  21202    BALTIMORE CITY    (CNTY)

| Classification(s) | Bases of Premium | Exposure | Rate |
|---|---|---|---|
| **Premise 01** | | | |
| Premises/Operations<br>UPSCALE RESTAURANTS - MODERATE | GROSS SALES | 8,000,000 | .5416 |
| Products/Completed Operations<br>UPSCALE RESTAURANTS - MODERATE | GROSS SALES | 8,000,000 | .0596 |
| Liquor Liability<br>LIQ LIAB-UPSCALE RESTAURANT-MODERAT | GROSS SALES | 2,000,000 | 3.5880 |

GL - 3

POLICY NUMBER S 67 MZX 80869907

NAMED INSURED
FOGO DE CHAO CHURRASCARIA

RATING PERIOD 02-15-07 TO 02-15-08

## GENERAL LIABILITY SCHEDULE (continued)

| Classification(s) | Bases of Premium | Exposure | Rate |
|---|---|---|---|
| **Premise 02** | | | |
| Premises/Operations<br>BLDG/PREM - BANK/OFFICE - NOC - FP<br>Products/Completed Operations are Subject<br>to the General Aggregate Limit | AREA | 4,352 | 11.8531 |
| **Premise 03** | | | |
| Premises/Operations<br>UPSCALE RESTAURANTS - MODERATE | GROSS SALES | 12,000,000 | .6752 |
| Products/Completed Operations<br>UPSCALE RESTAURANTS - MODERATE | GROSS SALES | 12,000,000 | .0596 |
| Liquor Liability<br>LIQ LIAB-UPSCALE RESTAURANT-MODERAT | GROSS SALES | 2,500,000 | 3.5880 |
| **Premise 04** | | | |
| Premises/Operations<br>PARKING - PRIVATE<br>Products/Completed Operations are Subject<br>to the General Aggregate Limit | AREA | 40,000 | 3.3706 |
| **Premise 05** | | | |
| Premises/Operations<br>UPSCALE RESTAURANTS - MODERATE | GROSS SALES | 10,000,000 | .3802 |
| Products/Completed Operations<br>UPSCALE RESTAURANTS - MODERATE | GROSS SALES | 10,000,000 | .0403 |
| Liquor Liability<br>LIQ LIAB-UPSCALE RESTAURANT-MODERAT | GROSS SALES | 2,000,000 | 3.4580 |
| **Premise 06** | | | |
| Premises/Operations<br>UPSCALE RESTAURANTS - MODERATE | GROSS SALES | 13,000,000 | .6229 |
| Products/Completed Operations<br>UPSCALE RESTAURANTS - MODERATE | GROSS SALES | 13,000,000 | .0434 |

GL - 4

POLICY NUMBER **S 67 MZX 80869907**

NAMED INSURED
    FOGO DE CHAO CHURRASCARIA

RATING PERIOD 02-15-07 TO 02-15-08

## GENERAL LIABILITY SCHEDULE (continued)

| Classification(s) | Bases of Premium | Exposure | Rate |
|---|---|---|---|
| Liquor Liability<br>LIQ LIAB-UPSCALE RESTAURANT-MODERAT | GROSS SALES | 3,000,000 | 3.5880 |
| **Premise 07** | | | |
| Premises/Operations<br>UPSCALE RESTAURANTS - MODERATE | GROSS SALES | 8,000,000 | .6110 |
| Products/Completed Operations<br>UPSCALE RESTAURANTS - MODERATE | GROSS SALES | 8,000,000 | .1490 |
| Liquor Liability<br>LIQ LIAB-UPSCALE RESTAURANT-MODERAT | GROSS SALES | 2,000,000 | 3.3540 |
| **Premise 08** | | | |
| Premises/Operations<br>UPSCALE RESTAURANTS - MODERATE | GROSS SALES | 10,000,000 | .3722 |
| Products/Completed Operations<br>UPSCALE RESTAURANTS - MODERATE | GROSS SALES | 10,000,000 | .0401 |
| Liquor Liability<br>LIQ LIAB-UPSCALE RESTAURANT-MODERAT | GROSS SALES | 2,000,000 | 3.5880 |
| **Premise 09** | | | |
| Premises/Operations<br>UPSCALE RESTAURANTS - MODERATE | GROSS SALES | 5,000,000 | .3248 |
| Products/Completed Operations<br>UPSCALE RESTAURANTS - MODERATE | GROSS SALES | 5,000,000 | .0591 |
| Liquor Liability<br>LIQ LIAB-UPSCALE RESTAURANT-MODERAT | GROSS SALES | 1,000,000 | 3.5880 |
| **Premise 10** | | | |
| Premises/Operations<br>UPSCALE RESTAURANTS - MODERATE | GROSS SALES | 7,000,000 | 1.8529 |
| Products/Completed Operations<br>UPSCALE RESTAURANTS - MODERATE | GROSS SALES | 7,000,000 | .0534 |

POLICY NUMBER **8 67 MZX 80869907**

NAMED INSURED
    FOGO DE CHAO CHURRASCARIA

RATING PERIOD 02-15-07 TO 02-15-08

## GENERAL LIABILITY SCHEDULE (continued)

| Classification(s) | Bases of Premium | Exposure | Rate |
|---|---|---|---|
| Liquor Liability<br>LIQ LIAB-UPSCALE RESTAURANT-MODERAT | GROSS SALES | 1,500,000 | 3.5880 |
| MULTICOVER | | | 2730 |

| | | |
|---|---|---|
| Employee Benefits Administration Errors and Omissions | | |
| EMPLOYEE BENEFITS ADMINISTRATION | NUMBER OF EMPLOYEES | 400 |

GL - 6

# Commercial General Liability Coverage Form - CG 00 01 12 04

Policy Amendment(s) Commercial General Liability

Various provisions in this policy restrict coverage. Read the entire policy carefully to determine rights, duties and what is and is not covered.

Throughout this policy the words **you** and **your** refer to the Named Insured shown in the Declarations, and any other person or organization qualifying as a Named Insured under this policy. The words **we, us** and **our** refer to the company providing this insurance.

The word **insured** means any person or organization qualifying as such under Section II - Who Is an Insured.

Other words and phrases that appear in bold face have special meaning. Refer to Section V - Definitions.

## Section I - Coverages

### Coverage A Bodily Injury and Property Damage Liability

1. **Insuring Agreement**

   a. We will pay those sums that the insured becomes legally obligated to pay as damages because of **bodily injury** or **property damage** to which this insurance applies. We will have the right and duty to defend the insured against any **suit** seeking those damages. However, we will have no duty to defend the insured against any **suit** seeking damages for **bodily injury** or **property damage** to which this insurance does not apply. We may at our discretion investigate any **occurrence** and settle any claim or **suit** that may result. But:

      (1) The amount we will pay for damages is limited as described in Section III - Limits of Insurance; and

      (2) Our right and duty to defend ends when we have used up the applicable limit of insurance in the payment of judgments or settlements under Coverages A or B or medical expenses under Coverage C.

      No other obligation or liability to pay sums or perform acts or services is covered unless explicitly provided for under Supplementary Payments - Coverages A and B.

   b. This insurance applies to **bodily injury** and **property damage** only if:

      (1) The **bodily injury** or **property damage** is caused by an **occurrence** that takes place in the **coverage territory**;

      (2) The **bodily injury** or **property damage** occurs during the policy period; and

      (3) Prior to the policy period, no insured listed under Paragraph 1. of Section II - Who Is an Insured and no **employee** authorized by you to give or receive notice of an **occurrence** or claim, knew that the **bodily injury** or **property damage** had occurred, in whole or in part. If such a listed insured or authorized **employee** knew, prior to the policy period, that the **bodily injury** or **property damage** occurred, then any continuation, change or resumption of such **bodily injury** or **property damage** during or after the policy period will be deemed to have been known prior to the policy period.

   c. **Bodily injury** or **property damage** which occurs during the policy period and was not, prior to the policy period, known to have occurred by any insured listed under Paragraph 1. of Section II - Who Is an Insured or any **employee** authorized by you to give or receive notice of an **occurrence** or claim, includes any continuation, change or resumption of that **bodily injury** or **property damage** after the end of the policy period.

This Form must be attached to Change Endorsement when issued after the policy is written.

One of the **Fireman's Fund Insurance Companies** as named in the policy

Secretary

President

CG0001 12-04
Copyright, ISO Properties, Inc., 2003

d. **Bodily injury** or **property damage** will be deemed to have been known to have occurred at the earliest time when any insured listed under Paragraph 1. of Section II - Who Is an Insured or any **employee** authorized by you to give or receive notice of an **occurrence** or claim:

   (1) Reports all, or any part, of the **bodily injury** or **property damage** to us or any other insurer;

   (2) Receives a written or verbal demand or claim for damages because of the **bodily injury** or **property damage**; or

   (3) Becomes aware by any other means that **bodily injury** or **property damage** has occurred or has begun to occur.

e. Damages because of **bodily injury** include damages claimed by any person or organization for care, loss of services or death resulting at any time from the **bodily injury**.

2. **Exclusions**

   This insurance does not apply to:

   a. Expected or Intended Injury

      **Bodily injury** or **property damage** expected or intended from the standpoint of the insured. This exclusion does not apply to **bodily injury** resulting from the use of reasonable force to protect persons or property.

   b. Contractual Liability

      **Bodily injury** or **property damage** for which the insured is obligated to pay damages by reason of the assumption of liability in a contract or agreement. This exclusion does not apply to liability for damages:

      (1) That the insured would have in the absence of the contract or agreement; or

      (2) Assumed in a contract or agreement that is an **insured contract**, provided the **bodily injury** or **property damage** occurs subsequent to the execution of the contract or agreement. Solely for the purposes of liability assumed in an **insured contract**, reasonable attorney fees and necessary litigation expenses incurred by or for a party other than an insured are deemed to be damages because of **bodily injury** or **property damage**, provided:

      (a) Liability to such party for, or for the cost of, that party's defense has also been assumed in the same **insured contract**; and

      (b) Such attorney fees and litigation expenses are for defense of that party against a civil or alternative dispute resolution proceeding in which damages to which this insurance applies are alleged.

   c. Liquor Liability

      **Bodily injury** or **property damage** for which any insured may be held liable by reason of:

      (1) Causing or contributing to the intoxication of any person;

      (2) The furnishing of alcoholic beverages to a person under the legal drinking age or under the influence of alcohol; or

      (3) Any statute, ordinance or regulation relating to the sale, gift, distribution or use of alcoholic beverages.

      This exclusion applies only if you are in the business of manufacturing, distributing, selling, serving or furnishing alcoholic beverages.

   d. Workers' Compensation and Similar Laws

      Any obligation of the insured under a workers' compensation, disability benefits or unemployment compensation law or any similar law.

   e. Employer's Liability

      **Bodily injury** to:

      (1) An **employee** of the insured arising out of and in the course of:

         (a) Employment by the insured; or

         (b) Performing duties related to the conduct of the insured's business; or

      (2) The spouse, child, parent, brother or sister of that **employee** as a consequence of Paragraph (1) above.

      This exclusion applies:

      (1) Whether the insured may be liable as an employer or in any other capacity; and

(2) To any obligation to share damages with or repay someone else who must pay damages because of the injury.

This exclusion does not apply to liability assumed by the insured under an **insured contract.**

f.  Pollution

(1) **Bodily injury** or **property damage** arising out of the actual, alleged or threatened discharge, dispersal, seepage, migration, release or escape of **pollutants:**

(a) At or from any premises, site or location which is or was at any time owned or occupied by, or rented or loaned to, any insured. However, this subparagraph does not apply to:

(i) **Bodily injury** if sustained within a building and caused by smoke, fumes, vapor or soot produced by or originating from equipment that is used to heat, cool or dehumidify the building, or equipment that is used to heat water for personal use, by the building's occupants or their guests;

(ii) **Bodily injury** or **property damage** for which you may be held liable, if you are a contractor and the owner or lessee of such premises, site or location has been added to your policy as an additional insured with respect to your ongoing operations performed for that additional insured at that premises, site or location and such premises, site or location is not and never was owned or occupied by, or rented or loaned to, any insured, other than that additional insured; or

(iii) **Bodily injury** or **property damage** arising out of heat, smoke or fumes from a **hostile fire;**

(b) At or from any premises, site or location which is or was at any time used by or for any insured or others for the handling, storage, disposal, processing or treatment of waste;

(c) Which are or were at any time transported, handled, stored, treated, disposed of, or processed as waste by or for:

(i) Any insured; or

(ii) Any person or organization for whom you may be legally responsible; or

(d) At or from any premises, site or location on which any insured or any contractors or subcontractors working directly or indirectly on any insured's behalf are performing operations if the **pollutants** are brought on or to the premises, site or location in connection with such operations by such insured, contractor or subcontractor. However, this subparagraph does not apply to:

(i) **Bodily injury** or **property damage** arising out of the escape of fuels, lubricants or other operating fluids which are needed to perform the normal electrical, hydraulic or mechanical functions necessary for the operation of **mobile equipment** or its parts, if such fuels, lubricants or other operating fluids escape from a vehicle part designed to hold, store or receive them. This exception does not apply if the **bodily injury** or **property damage** arises out of the intentional discharge, dispersal or release of the fuels, lubricants or other operating fluids, or if such fuels, lubricants or other operating fluids are brought on or to the premises, site or location with the intent that they be discharged, dispersed or released as part of the operations being performed by such insured, contractor or subcontractor;

(ii) **Bodily injury** or **property damage** sustained within a building and caused by the release of gases, fumes or vapors from materials brought into that building in connection with operations being performed by

you or on your behalf by a contractor or subcontractor; or

(iii) **Bodily injury** or **property damage** arising out of heat, smoke or fumes from a **hostile fire**.

(e) At or from any premises, site or location on which any insured or any contractors or subcontractors working directly or indirectly on any insured's behalf are performing operations if the operations are to test for, monitor, clean up, remove, contain, treat, detoxify or neutralize, or in any way respond to, or assess the effects of, **pollutants**.

(2) Any loss, cost or expense arising out of any:

(a) Request, demand, order or statutory or regulatory requirement that any insured or others test for, monitor, clean up, remove, contain, treat, detoxify or neutralize, or in any way respond to, or assess the effects of, **pollutants**; or

(b) Claim or **suit** by or on behalf of a governmental authority for damages because of testing for, monitoring, cleaning up, removing, containing, treating, detoxifying or neutralizing, or in any way responding to, or assessing the effects of **pollutants**.

However, this paragraph does not apply to liability for damages because of **property damage** that the insured would have in the absence of such request, demand, order or statutory or regulatory requirement, or such claim or **suit** by or on behalf of a governmental authority.

g.   Aircraft, Auto or watercraft

**Bodily injury** or **property damage** arising out of the ownership, maintenance, use or entrustment to others of any aircraft, **auto** or watercraft owned or operated by or rented or loaned to any insured. Use includes operation and **loading or unloading.**

This exclusion applies even if the claims against any insured allege negligence or other wrongdoing in the supervision, hiring, employment, training or monitoring of others by

that insured, if the **occurrence** which caused the **bodily injury** or **property damage** involved the ownership, maintenance, use or entrustment to others of any aircraft, **auto** or watercraft that is owned or operated by or rented or loaned to any insured.

This exclusion does not apply to:

(1) A watercraft while ashore on premises you own or rent;

(2) A watercraft you do not own that is:

(a) Less than 26 feet long; and

(b) Not being used to carry persons or property for a charge;

(3) Parking an **auto** on, or on the ways next to, premises you own or rent, provided the **auto** is not owned by or rented or loaned to you or the insured;

(4) Liability assumed under any **insured contract** for the ownership, maintenance or use of aircraft or watercraft; or

(5) **Bodily injury** or property damage arising out of:

(a) The operation of machinery or equipment that is attached to, or part of, a land vehicle that would qualify under the definition of **mobile equipment** if it were not subject to a compulsory or financial responsibility law or other motor vehicle insurance law in the state where it is licensed or principally garaged; or

(b) The operation of any of the machinery or equipment listed in Paragraph f.(2) or f.(3) of the definition of **mobile equipment.**

h.   Mobile Equipment

**Bodily injury** or **property damage** arising out of:

(1) The transportation of **mobile equipment** by an **auto** owned or operated by or rented or loaned to any insured; or

(2) The use of **mobile equipment** in, or while in practice for, or while being prepared for, any prearranged racing, speed, demolition or stunting activity.

i.  War

**Bodily injury** or **property damage**, however caused, arising, directly or indirectly, out of:

(1) War, including undeclared or civil war;

(2) Warlike action by a military force, including action in hindering or defending against an actual or expected attack, by any government, sovereign or other authority using military personnel or other agents; or

(3) Insurrection, rebellion, revolution, usurped power, or action taken by governmental authority in hindering or defending against any of these.

j.  Damage to Property

**Property damage** to:

(1) Property you own, rent, or occupy, including any costs or expenses incurred by you, or any other person, organization or entity, for repair, replacement, enhancement, restoration or maintenance of such property for any reason, including prevention of injury to a person or damage to another's property;

(2) Premises you sell, give away or abandon, if the **property damage** arises out of any part of those premises;

(3) Property loaned to you;

(4) Personal property in the care, custody or control of the insured;

(5) That particular part of real property on which you or any contractors or subcontractors working directly or indirectly on your behalf are performing operations, if the **property damage** arises out of those operations; or

(6) That particular part of any property that must be restored, repaired or replaced because **your work** was incorrectly performed on it.

Paragraphs (1), (3) and (4) of this exclusion do not apply to **property damage** (other than damage by fire) to premises, including the contents of such premises, rented to you for a period of 7 or fewer consecutive days. A separate limit of insurance applies to Damage

to Premises Rented to You as described in Section III - Limits of Insurance.

Paragraph (2) of this exclusion does not apply if the premises are **your work** and were never occupied, rented or held for rental by you.

Paragraphs (3), (4), (5) and (6) of this exclusion do not apply to liability assumed under a sidetrack agreement.

Paragraph (6) of this exclusion does not apply to **property damage** included in the **products-completed operations hazard.**

k.  Damage to Your Product

**Property damage** to **your product** arising out of it or any part of it.

l.  Damage to Your Work

**Property damage** to **your work** arising out of it or any part of it and included in the **products-completed operations hazard.**

This exclusion does not apply if the damaged work or the work out of which the damage arises was performed on your behalf by a subcontractor.

m.  Damage to Impaired Property or Property Not Physically Injured

**Property damage** to **impaired property** or property that has not been physically injured arising out of:

(1) A defect, deficiency, inadequacy or dangerous condition in **your product** or **your work;** or

(2) A delay or failure by you or anyone acting on your behalf to perform a contract or agreement in accordance with its terms.

This exclusion does not apply to the loss of use of other property arising out of sudden and accidental physical injury to **your product** or **your work** after it has been put to its intended use.

n.  Recall of Products, Work or Impaired Property

Damages claimed for any loss, cost or expense incurred by you or others for the loss of use, withdrawal, recall, inspection, repair, replacement, adjustment, removal or disposal of:

(1) **Your product;**

(2) **Your work;** or

(3) **Impaired property;**

if such product, work, or property is withdrawn or recalled from the market or from use by any person or organization because of a known or suspected defect, deficiency, inadequacy or dangerous condition in it.

o.   Personal and Advertising Injury

**Bodily injury** arising out of **personal and advertising injury.**

p.   Electronic Data

Damages arising out of the loss of, loss of use of, damage to, corruption of, inability to access, or inability to manipulate electronic data.

As used in this exclusion, electronic data means information, facts or programs stored as or on, created or used on, or transmitted to or from computer software, including systems and applications software, hard or floppy disks, CD-ROMS, tapes, drives, cells, data processing devices or any other media which are used with electronically controlled equipment.

Exclusions c. through n. do not apply to damage by fire to premises while rented to you or temporarily occupied by you with permission of the owner.  A separate limit of insurance applies to this coverage as described in Section III - Limits of Insurance.

**Coverage B Personal and Advertising Injury Liability**

1.   **Insuring Agreement**

a.   We will pay those sums that the insured becomes legally obligated to pay as damages because of **personal and advertising injury** to which this insurance applies.  We will have the right and duty to defend the insured against any **suit** seeking those damages. However, we will have no duty to defend the insured against any **suit** seeking damages for **personal and advertising injury** to which this insurance does not apply.  We may, at our discretion, investigate any offense and settle any claim or **suit** that may result.  But:

(1) The amount we will pay for damages is limited as described in Section III - Limits of Insurance; and

(2) Our right and duty to defend end when we have used up the applicable limit of insurance in the payment of judgments or settlements under Coverage A or B or medical expenses under Coverage C.

No other obligation or liability to pay sums or perform acts or services is covered unless explicitly provided for under Supplementary Payments - Coverages A and B.

b.   This insurance applies to **personal and advertising injury** caused by an offense arising out of your business but only if the offense was committed in the **coverage territory** during the policy period.

2.   **Exclusions**

This insurance does not apply to:

a.   Knowing Violation of Rights of Another

**Personal and advertising injury** caused by or at the direction of the insured with the knowledge that the act would violate the rights of another and would inflict **personal and advertising injury.**

b.   Material Published With Knowledge of Falsity

**Personal and advertising injury** arising out of oral or written publication of material, if done by or at the direction of the insured with knowledge of its falsity.

c.   Material Published Prior to Policy Period

**Personal and advertising injury** arising out of oral or written publication of material whose first publication took place before the beginning of the policy period.

d.   Criminal Acts

**Personal and advertising injury** arising out of a criminal act committed by or at the direction of the insured.

e.   Contractual Liability

**Personal and advertising injury** for which the insured has assumed liability in a contract or agreement.  This exclusion does not apply to liability for damages that the insured would

have in the absence of the contract or agreement.

f.  Breach of Contract

**Personal and advertising injury** arising out of a breach of contract, except an implied contract to use another's advertising idea in your **advertisement**.

g.  Quality or Performance of Goods - Failure to Conform to Statements

**Personal and advertising injury** arising out of the failure of goods, products or services to conform with any statement of quality or performance made in your **advertisement**.

h.  Wrong Description of Prices

**Personal and advertising injury** arising out of the wrong description of the price of goods, products or services stated in your **advertisement**.

i.  Infringement of Copyright, Patent, Trademark or Trade Secret

**Personal and advertising injury** arising out of the infringement of copyright, patent, trademark, trade secret or other intellectual property rights.

However, this exclusion does not apply to infringement, in your **advertisement**, of copyright, trade dress or slogan.

j.  Insureds in Media and Internet Type Businesses

**Personal and advertising injury** committed by an insured whose business is:

(1) Advertising, broadcasting, publishing or telecasting;

(2) Designing or determining content of web-sites for others; or

(3) An Internet search, access, content or service provider.

However, this exclusion does not apply to Paragraphs 14.a., b. and c. of **personal and advertising injury** under the Definitions Section.

For the purposes of this exclusion, the placing of frames, borders or links, or advertising, for

you or others anywhere on the Internet, is not by itself, considered the business of advertising, broadcasting, publishing or telecasting.

k.  Electronic Chatrooms or Bulletin Boards

**Personal and advertising injury** arising out of an electronic chatroom or bulletin board the insured hosts, owns, or over which the insured exercises control.

l.  Unauthorized Use of Another's Name or Product

**Personal and advertising injury** arising out of the unauthorized use of another's name or product in your e-mail address, domain name or metatag, or any other similar tactics to mislead another's potential customers.

m.  Pollution

**Personal and advertising injury** arising out of the actual, alleged or threatened discharge, dispersal, seepage, migration, release or escape of **pollutants** at any time.

n.  Pollution-Related

Any loss, cost or expense arising out of any:

(1) Request, demand, order or statutory or regulatory requirement that any insured or others test for, monitor, clean up, remove, contain, treat, detoxify or neutralize, or in any way respond to, or assess the effects of, **pollutants**; or

(2) Claim or suit by or on behalf of a governmental authority for damages because of testing for, monitoring, cleaning up, removing, containing, treating, detoxifying or neutralizing, or in any way responding to, or assessing the effects of, **pollutants**.

o.  War

**Personal and advertising injury**, however caused, arising, directly or indirectly, out of:

(1) War, including undeclared or civil war;

(2) Warlike action by a military force, including action in hindering or defending against an actual or expected attack, by any government, sovereign or other authority using military personnel or other agents; or

(3) Insurrection, rebellion, revolution, usurped power, or action taken by governmental authority in hindering or defending against any of these.

## Coverage C Medical Payments

1. **Insuring Agreement**

   a. We will pay medical expenses as described below for **bodily injury** caused by an accident:

      (1) On premises you own or rent;

      (2) On ways next to premises you own or rent; or

      (3) Because of your operations;

      provided that:

      (1) The accident takes place in the **coverage territory** and during the policy period;

      (2) The expenses are incurred and reported to us within one year of the date of the accident; and

      (3) The injured person submits to examination, at our expense, by physicians of our choice as often as we reasonably require.

   b. We will make these payments regardless of fault. These payments will not exceed the applicable limit of insurance. We will pay reasonable expenses for:

      (1) First aid administered at the time of an accident;

      (2) Necessary medical, surgical, x-ray and dental services, including prosthetic devices; and

      (3) Necessary ambulance, hospital, professional nursing and funeral services.

2. **Exclusions**

   We will not pay expenses for **bodily injury**;

   a. Any Insured

      To any insured, except **volunteer workers.**

   b. Hired Person

      To a person hired to do work for or on behalf of any insured or a tenant of any insured.

   c. Injury on Normally Occupied Premises

      To a person injured on that part of premises you own or rent that the person normally occupies.

   d. Workers Compensation and Similar Laws

      To a person, whether or not an **employee** of any insured, if benefits for the **bodily injury** are payable or must be provided under a workers' compensation or disability benefits law or a similar law.

   e. Athletics Activities

      To a person injured while practicing, instructing or participating in any physical exercises or games, sports, or athletic contests.

   f. Products-Completed Operations Hazard

      Included within the **products-completed operations hazard.**

   g. Coverage a Exclusions

      Excluded under Coverage A.

**Supplementary Payments - Coverages A and B**

1. We will pay, with respect to any claim we investigate or settle, or any **suit** against an insured we defend:

   a. All expenses we incur.

   b. Up to $250 for cost of bail bonds required because of accidents or traffic law violations arising out of the use of any vehicle to which the Bodily Injury Liability Coverage applies. We do not have to furnish these bonds.

   c. The cost of bonds to release attachments, but only for bond amounts within the applicable limit of insurance. We do not have to furnish these bonds.

   d. All reasonable expenses incurred by the insured at our request to assist us in the investigation or defense of the claim or **suit**, including actual loss of earnings up to $250 a day because of time off from work.

   e. All costs taxed against the insured in the **suit**.

   f. Prejudgment interest awarded against the insured on that part of the judgment we pay. If we make an offer to pay the applicable limit of insurance, we will not pay any prejudgment

interest based on that period of time after the offer.

g. All interest on the full amount of any judgment that accrues after entry of the judgment and before we have paid, offered to pay, or deposited in court the part of the judgment that is within the applicable limit of insurance.

These payments will not reduce the limits of insurance.

2. If we defend an insured against a **suit** and an indemnitee of the insured is also named as a party to the **suit**, we will defend that indemnitee if all of the following conditions are met:

a. The **suit** against the indemnitee seeks damages for which the insured has assumed the liability of the indemnitee in a contract or agreement that is an **insured contract**;

b. This insurance applies to such liability assumed by the insured;

c. The obligation to defend, or the cost of the defense of, that indemnitee, has also been assumed by the insured in the same **insured contract**;

d. The allegations in the **suit** and the information we know about the **occurrence** are such that no conflict appears to exist between the interests of the insured and the interests of the indemnitee;

e. The indemnitee and the insured ask us to conduct and control the defense of that indemnitee against such **suit** and agree that we can assign the same counsel to defend the insured and the indemnitee; and

f. The indemnitee:

(1) Agrees in writing to:

(a) Cooperate with us in the investigation, settlement or defense of the **suit**;

(b) Immediately send us copies of any demands, notices, summonses or legal papers received in connection with the **suit**;

(c) Notify any other insurer whose coverage is available to the indemnitee; and

(d) Cooperate with us with respect to coordinating other applicable insurance available to the indemnitee; and

(2) Provides us with written authorization to:

(a) Obtain records and other information related to the **suit**; and

(b) Conduct and control the defense of the indemnitee in such **suit**.

So long as the above conditions are met, attorneys' fees incurred by us in the defense of that indemnitee, necessary litigation expenses incurred by us and necessary litigation expenses incurred by the indemnitee at our request will be paid as Supplementary Payments. Notwithstanding the provisions of Paragraph 2.b.(2) of Section I - Coverage A - Bodily Injury and Property Damage Liability, such payments will not be deemed to be damages for **bodily injury** and **property damage** and will not reduce the limits of insurance.

Our obligation to defend an insured's indemnitee and to pay for attorneys' fees and necessary litigation expenses as Supplementary Payments ends when:

a. We have used up the applicable limit of insurance in the payment of judgments or settlements; or

b. The conditions set forth above, or the terms of the agreement described in Paragraph f. above, are no longer met.

**Section II - Who Is an Insured**

1. If you are designated in the Declarations as:

a. An individual, you and your spouse are insureds, but only with respect to the conduct of a business of which you are the sole owner.

b. A partnership or joint venture, you are an insured. Your members, your partners, and their spouses are also insureds, but only with respect to the conduct of your business.

c. A limited liability company, you are an insured. Your members are also insureds, but only with respect to the conduct of your business. Your managers are insureds, but only with respect to their duties as your managers.

d. An organization other than a partnership, joint venture or limited liability company, you are an insured. Your **executive officers** and directors are insureds, but only with respect to their duties as your officers or directors. Your stockholders are also insureds, but only with respect to their liability as stockholders.

e. A trust, you are an insured. Your trustees are also insureds, but only with respect to their duties as trustees.

2. Each of the following is also an insured:

a. Your **volunteer workers** only while performing duties related to the conduct of your business, or your **employees**, other than either your **executive officers** (if you are an organization other than a partnership, joint venture or limited liability company) or your managers (if you are a limited liability company), but only for acts within the scope of their employment by you while performing duties related to the conduct of your business. However, none of these **employees** or **volunteer workers** are insureds for:

(1) **Bodily injury** or **personal and advertising injury:**

(a) To you, to your partners or members (if you are a partnership or joint venture), to your members (if you are a limited liability company), a co-**employee** while in the course of his or her employment or performing duties related to the conduct of your business, or to your other **volunteer workers** while performing duties related to the conduct of your business;

(b) To the spouse, child, parent, brother or sister of that co-**employee** as a consequence of Paragraph (1)(a) above;

(c) For which there is any obligation to share damages with or repay someone else who must pay damages because of the injury described in Paragraphs (1)(a) or (b) above; or

(d) Arising out of his or her providing or failing to provide professional health care services.

(2) **Property damage** to property:

(a) Owned, occupied or used by,

(b) Rented to, in the care, custody or control of, or over which physical control is being exercised for any purpose by

you, any of your **employees, volunteer workers,** any partner or member (if you are a partnership or joint venture), or any member (if you are a limited liability company).

b. Any person (other than your **employee**) or **volunteer workers,** or any organization while acting as your real estate manager.

c. Any person or organization having proper temporary custody of your property if you die, but only:

(1) With respect to liability arising out of the maintenance or use of that property; and

(2) Until your legal representative has been appointed.

d. Your legal representative if you die, but only with respect to duties as such. That representative will have all your rights and duties under this Coverage Part.

3. Any organization you newly acquire or form, other than a partnership, joint venture or limited liability company, and over which you maintain ownership or majority interest, will qualify as a Named Insured if there is no other similar insurance available to that organization. However:

a. Coverage under this provision is afforded only until the 90th day after you acquire or form the organization or the end of the policy period, whichever is earlier;

b. Coverage A does not apply to **bodily injury** or **property damage** that occurred before you acquired or formed the organization; and

c. Coverage B does not apply to **personal and advertising injury** arising out of an offense committed before you acquired or formed the organization.

No person or organization is an insured with respect to the conduct of any current or past partnership, joint venture or limited liability company that is not shown as a Named Insured in the Declarations.

**Section III - Limits of Insurance**

1. The Limits of Insurance shown in the Declarations and the rules below fix the most we will pay regardless of the number of:

   a. Insureds;

   b. Claims made or **suits** brought; or

   c. Persons or organizations making claims or bringing **suits**.

2. The General Aggregate Limit is the most we will pay for the sum of:

   a. Medical expenses under Coverage C;

   b. Damages under Coverage A, except damages because of **bodily injury** or **property damage** included in the **products-completed operations hazard**; and

   c. Damages under Coverage B.

3. The Products-Completed Operations Aggregate Limit is the most we will pay under Coverage A for damages because of **bodily injury** and **property damage** included in the **products-completed operations hazard**.

4. Subject to 2. above, the Personal and Advertising Injury Limit is the most we will pay under Coverage B for the sum of all damages because of all **personal and advertising injury** sustained by any one person or organization.

5. Subject to 2. or 3. above, whichever applies, the Each Occurrence Limit is the most we will pay for the sum of:

   a. Damages under Coverage A; and

   b. Medical expenses under Coverage C

   because of all **bodily injury** and **property damage** arising out of any one **occurrence**.

6. Subject to 5. above, the Damage to Premises Rented to You Limit is the most we will pay under Coverage A for damages because of **property damage** to any one premises, while rented to you, or in the case of damage by fire, while rented to you or temporarily occupied by you with permission of the owner.

7. Subject to 5. above, the Medical Expense Limit is the most we will pay under Coverage C for all

medical expenses because of **bodily injury** sustained by any one person.

The Limits of Insurance of this Coverage Part apply separately to each consecutive annual period and to any remaining period of less than 12 months, starting with the beginning of the policy period shown in the Declarations, unless the policy period is extended after issuance for an additional period of less than 12 months. In that case, the additional period will be deemed part of the last preceding period for purposes of determining the Limits of Insurance.

**Section IV - Commercial General Liability Conditions**

1. **Bankruptcy**

   Bankruptcy or insolvency of the insured or of the insured's estate will not relieve us of our obligations under this Coverage Part.

2. **Duties in the Event of Occurrence, Offense, Claim or Suit**

   a. You must see to it that we are notified as soon as practicable of an **occurrence** or an offense which may result in a claim. To the extent possible, notice should include:

      (1) How, when and where the **occurrence** or offense took place;

      (2) The names and addresses of any injured persons and witnesses; and

      (3) The nature and location of any injury or damage arising out of the **occurrence** or offense.

   b. If a claim is made or **suit** is brought against any insured, you must:

      (1) Immediately record the specifics of the claim or **suit** and the date received; and

      (2) Notify us as soon as practicable.

      You must see to it that we receive written notice of the claim or **suit** as soon as practicable.

   c. You and any other involved insured must:

      (1) Immediately send us copies of any demands, notices, summonses or legal papers received in connection with the claim or **suit**;

      (2) Authorize us to obtain records and other information;

(3) Cooperate with us in the investigation or settlement of the claim or defense against the **suit**; and

(4) Assist us, upon our request, in the enforcement of any right against any person or organization which may be liable to the insured because of injury or damage to which this insurance may also apply.

d.　No insured will, except at that insured's own cost, voluntarily make a payment, assume any obligation, or incur any expense, other than for first aid, without our consent.

3.　**Legal Action Against Us**

No person or organization has a right under this Coverage Part:

a.　To join us as a party or otherwise bring us into a **suit** asking for damages from an insured; or

b.　To sue us on this Coverage Part unless all of its terms have been fully complied with.

A person or organization may sue us to recover on an agreed settlement or on a final judgment against an insured; but we will not be liable for damages that are not payable under the terms of this Coverage Part or that are in excess of the applicable limit of insurance. An agreed settlement means a settlement and release of liability signed by us, the insured and the claimant or the claimant's legal representative.

4.　**Other Insurance**

If other valid and collectible insurance is available to the insured for a loss we cover under Coverages A or B of this Coverage Part, our obligations are limited as follows:

a.　Primary Insurance

This insurance is primary except when b. below applies. If this insurance is primary, our obligations are not affected unless any of the other insurance is also primary. Then, we will share with all that other insurance by the method described in c. below.

b.　Excess Insurance

This insurance is excess over:

(1) Any of the other insurance, whether primary, excess, contingent or on any other basis:

(a) That is Fire, Extended Coverage, Builder's Risk, Installation Risk or similar coverage for **your work**;

(b) That is Fire insurance for premises rented to you or temporarily occupied by you with permission of the owner;

(c) That is insurance purchased by you to cover your liability as a tenant for **property damage** to premises rented to you or temporarily occupied by you with permission of the owner; or

(d) If the loss arises out of the maintenance or use of aircraft, **autos** or watercraft to the extent not subject to Exclusion g. of Section I - Coverage A - Bodily Injury and Property Damage Liability.

(2) Any other primary insurance available to you covering liability for damages arising out of the premises or operations, or the products and completed operations, for which you have been added as an additional insured by attachment of an endorsement.

When this insurance is excess, we will have no duty under Coverage A or B to defend the insured against any **suit** if any other insurer has a duty to defend the insured against that **suit**. If no other insurer defends, we will undertake to do so, but we will be entitled to the insured's rights against all those other insurers.

When this insurance is excess over other insurance, we will pay only our share of the amount of the loss, if any, that exceeds the sum of:

(1) The total amount that all such other insurance would pay for the loss in the absence of this insurance; and

(2) The total of all deductible and self-insured amounts under all that other insurance.

We will share the remaining loss, if any, with any other insurance that is not described in this Excess Insurance provision and was not bought specifically to apply in excess of the

Limits of Insurance shown in the Declarations of this Coverage Part.

c.  Method of Sharing

If all of the other insurance permits contribution by equal shares, we will follow this method also. Under this approach each insurer contributes equal amounts until it has paid its applicable limit of insurance or none of the loss remains, whichever comes first.

If any of the other insurance does not permit contribution by equal shares, we will contribute by limits. Under this method, each insurer's share is based on the ratio of its applicable limit of insurance to the total applicable limits of insurance of all insurers.

5.  **Premium Audit**

a.  We will compute all premiums for this Coverage Part in accordance with our rules and rates.

b.  Premium shown in this Coverage Part as advance premium is a deposit premium only. At the close of each audit period we will compute the earned premium for that period. Audit premiums are due and payable on notice to the first Named Insured. If the sum of the advance and audit premiums paid for the policy period is greater than the earned premium, we will return the excess to the first Named Insured.

c.  The first Named Insured must keep records of the information we need for premium computation, and send us copies at such times as we may request.

6.  **Representations**

By accepting this policy, you agree:

a.  The statements in the Declarations are accurate and complete;

b.  Those statements are based upon representations you made to us; and

c.  We have issued this policy in reliance upon your representations.

7.  **Separation of Insureds**

Except with respect to the Limits of Insurance, and any rights or duties specifically assigned in this Coverage Part to the first Named Insured, this insurance applies:

a.  As if each Named Insured were the only Named Insured; and

b.  Separately to each insured against whom claim is made or suit is brought.

8.  **Transfer of Rights of Recovery Against Others to Us**

If the insured has rights to recover all or part of any payment we have made under this Coverage Part, those rights are transferred to us. The insured must do nothing after loss to impair them. At our request, the insured will bring **suit** or transfer those rights to us and help us enforce them.

9.  **When We Do Not Renew**

If we decide not to renew this Coverage Part, we will mail or deliver to the first Named Insured shown in the Declarations written notice of the nonrenewal not less than 30 days before the expiration date.

If notice is mailed, proof of mailing will be sufficient proof of notice.

### Section V - Definitions

1.  **Advertisement** means a notice that is broadcast or published to the general public or specific market segments about your goods, products or services for the purpose of attracting customers or supporters. For the purposes of this definition:

a.  Notices that are published include material placed on the Internet or on similar electronic means of communication; and

b.  Regarding web-sites, only that part of a web-site that is about your goods, products or services for the purposes of attracting customers or supporters is considered an advertisement.

2.  **Auto** means:

a.  A land motor vehicle, trailer or semitrailer designed for travel on public roads, including any attached machinery or equipment; or

b.  Any other land vehicle that is subject to a compulsory or financial responsibility law or other motor vehicle insurance law in the state where it is licensed or principally garaged.

However, **auto** does not include **mobile equipment**.

3. **Bodily injury** means bodily injury, sickness or disease sustained by a person, including death resulting from any of these at any time.

4. **Coverage territory** means:

   a. The United States of America (including its territories and possessions), Puerto Rico and Canada;

   b. International waters or airspace, but only if the injury or damage occurs in the course of travel or transportation between any places included in a. above; or

   c. All other parts of the world if the injury or damage arises out of:

      (1) Goods or products made or sold by you in the territory described in a. above;

      (2) The activities of a person whose home is in the territory described in a. above, but is away for a short time on your business; or

      (3) **Personal and advertising injury** offenses that take place through the Internet or similar electronic means of communication

   provided the insured's responsibility to pay damages is determined in a **suit** on the merits, in the territory described in a. above or in a settlement we agree to.

5. **Employee** includes a **leased worker**. **Employee** does not include a **temporary worker.**

6. **Executive officer** means a person holding any of the officer positions created by your charter, constitution, by-laws or any other similar governing document.

7. **Hostile fire** means one which becomes uncontrollable or breaks out from where it was intended to be.

8. **Impaired property** means tangible property, other than **your product** or **your work,** that cannot be used or is less useful because:

   a. It incorporates **your product** or **your work** that is known or thought to be defective, deficient, inadequate or dangerous; or

   b. You have failed to fulfill the terms of a contract or agreement;

if such property can be restored to use by:

   a. The repair, replacement, adjustment or removal of **your product** or **your work;** or

   b. Your fulfilling the terms of the contract or agreement.

9. **Insured contract** means:

   a. A contract for a lease of premises. However, that portion of the contract for a lease of premises that indemnifies any person or organization for damage by fire to premises while rented to you or temporarily occupied by you with permission of the owner is not an **insured contract;**

   b. A sidetrack agreement;

   c. Any easement or license agreement, except in connection with construction or demolition operations on or within 50 feet of a railroad;

   d. An obligation, as required by ordinance, to indemnify a municipality, except in connection with work for a municipality;

   e. An elevator maintenance agreement;

   f. That part of any other contract or agreement pertaining to your business (including an indemnification of a municipality in connection with work performed for a municipality) under which you assume the tort liability of another party to pay for **bodily injury** or **property damage** to a third person or organization. Tort liability means a liability that would be imposed by law in the absence of any contract or agreement.

   Paragraph f. does not include that part of any contract or agreement:

      (1) That indemnifies a railroad for **bodily injury** or **property damage** arising out of construction or demolition operations, within 50 feet of any railroad property and affecting any railroad bridge or trestle, tracks, road-beds, tunnel, underpass or crossing;

      (2) That indemnifies an architect, engineer or surveyor for injury or damage arising out of:

         (a) Preparing, approving, or failing to prepare or approve, maps, shop drawings, opinions, reports, surveys,

field orders, change orders or draw-ings and specifications; or

(b) Giving directions or instructions, or failing to give them, if that is the primary cause of the injury or dam-age; or

(3) Under which the insured, if an architect, engineer or surveyor, assumes liability for an injury or damage arising out of the insured's rendering or failure to render professional services, including those listed in (2) above and supervisory, in-spection, architectural or engineering ac-tivities.

10. **Leased worker** means a person leased to you by a labor leasing firm under an agreement between you and the labor leasing firm, to perform duties re-lated to the conduct of your business. **Leased worker** does not include a **temporary worker**.

11. **Loading or unloading** means the handling of pro-perty:

a. After it is moved from the place where it is accepted for movement into or onto an air-craft, watercraft or **auto**;

b. While it is in or on an aircraft, watercraft or **auto**; or

c. While it is being moved from an aircraft, wa-tercraft or **auto** to the place where it is finally delivered;

but **loading or unloading** does not include the movement of property by means of a mechanical device, other than a hand truck, that is not at-tached to the aircraft, watercraft or **auto**.

12. **Mobile equipment** means any of the following types of land vehicles, including any attached ma-chinery or equipment:

a. Bulldozers, farm machinery, forklifts and other vehicles designed for use principally off public roads;

b. Vehicles maintained for use solely on or next to premises you own or rent;

c. Vehicles that travel on crawler treads;

d. Vehicles, whether self-propelled or not, maintained primarily to provide mobility to permanently mounted:

(1) Power cranes, shovels, loaders, diggers or drills; or

(2) Road construction or resurfacing equip-ment such as graders, scrapers or rollers;

e. Vehicles not described in a., b., c. or d. above that are not self-propelled and are maintained primarily to provide mobility to permanently attached equipment of the following types:

(1) Air compressors, pumps and generators, including spraying, welding, building cle-aning, geophysical exploration, lighting and well servicing equipment; or

(2) Cherry pickers and similar devices used to raise or lower workers;

f. Vehicles not described in a., b., c. or d. above maintained primarily for purposes other than the transportation of persons or cargo.

However, self-propelled vehicles with the fol-lowing types of permanently attached equip-ment are not **mobile equipment** but will be considered **autos**:

(1) Equipment designed primarily for:

(a) Snow removal;

(b) Road maintenance but not con-struction or resurfacing; or

(c) Street cleaning;

(2) Cherry pickers and similar devices mounted on automobile or truck chassis and used to raise or lower workers; and

(3) Air compressors, pumps and generators, including spraying, welding, building cleaning, geophysical exploration, light-ing and well servicing equipment.

However, **mobile equipment** does not include any land vehicles that are subject to a compulsory or financial responsibility law or other motor vehicle insurance law in the state where it is licensed or principally garaged. Land vehicles subject to a compulsory or financial responsibility law or other motor vehicle insurance law are considered **autos**.

13. **Occurrence** means an accident, including contin-uous or repeated exposure to substantially the same general harmful conditions.

14. **Personal and advertising injury** means injury, including consequential **bodily injury**, arising out of one or more of the following offenses:

   a.  False arrest, detention or imprisonment;

   b.  Malicious prosecution;

   c.  The wrongful eviction from, wrongful entry into, or invasion of the right of private occupancy of a room, dwelling or premises that a person occupies, committed by or on behalf of its owner, landlord or lessor;

   d.  Oral or written publication, in any manner, of material that slanders or libels a person or organization or disparages a person's or organization's goods, products or services;

   e.  Oral or written publication, in any manner, of material that violates a person's right of privacy;

   f.  The use of another's advertising idea in your **advertisement**; or

   g.  Infringing upon another's copyright, trade dress or slogan in your **advertisement**.

15. **Pollutants** means any solid, liquid, gaseous or thermal irritant or contaminant, including smoke, vapor, soot, fumes, acids, alkalis, chemicals and waste. Waste includes materials to be recycled, reconditioned or reclaimed.

16. **Products-completed operations hazard:**

   a.  Includes all **bodily injury** and **property damage** occurring away from premises you own or rent and arising out of **your product** or **your work** except:

      (1)  Products that are still in your physical possession; or

      (2)  Work that has not yet been completed or abandoned. However, **your work** will be deemed completed at the earliest of the following times:

         (a)  When all of the work called for in your contract has been completed.

         (b)  When all of the work to be done at the job site has been completed if your contract calls for work at more than one job site.

         (c)  When that part of the work done at a job site has been put to its

   intended use by any person or organization other than another contractor or subcontractor working on the same project.

   Work that may need service, maintenance, correction, repair or replacement, but which is otherwise complete, will be treated as completed.

   b.  Does not include **bodily injury** or **property damage** arising out of:

      (1)  The transportation of property, unless the injury or damage arises out of a condition in or on a vehicle not owned or operated by you, and that condition was created by the **loading or unloading** of that vehicle by any insured;

      (2)  The existence of tools, uninstalled equipment or abandoned or unused materials; or

      (3)  Products or operations for which the classification, listed in the Declarations or in a policy schedule, states that products-completed operations are subject to the General Aggregate Limit.

17. **Property damage** means:

   a.  Physical injury to tangible property, including all resulting loss of use of that property. All such loss of use shall be deemed to occur at the time of the physical injury that caused it; or

   b.  Loss of use of tangible property that is not physically injured. All such loss of use shall be deemed to occur at the time of the **occurrence** that caused it.

   For the purposes of this insurance, electronic data is not tangible property.

   As used in this definition, electronic data means information, facts or programs stored as or on, created or used on, or transmitted to or from computer software, including systems and applications software, hard or floppy disks, CD-ROMS, tapes, drives, cells, data processing devices or any other media which are used with electronically controlled equipment.

18. **Suit** means a civil proceeding in which damages because of **bodily injury**, **property damage** or **personal and advertising injury** to which this insurance applies are alleged. **Suit** includes:

a.  An arbitration proceeding in which such damages are claimed and to which the insured must submit or does submit with our consent; or

b.  Any other alternative dispute resolution proceeding in which such damages are claimed and to which the insured submits with our consent.

19. **Temporary worker** means a person who is furnished to you to substitute for a permanent **employee** on leave or to meet seasonal or short-term workload conditions.

20. **Volunteer worker** means a person who is not your **employee**, and who donates his or her work and acts at the direction of and within the scope of duties determined by you, and is not paid a fee, salary or other compensation by you or anyone else for their work performed for you.

21. **Your product:**

a.  Means:

(1) Any goods or products, other than real property, manufactured, sold, handled, distributed or disposed of by:

(a) You;

(b) Others trading under your name; or

(c) A person or organization whose business or assets you have acquired; and

(2) Containers (other than vehicles), materials, parts or equipment furnished in connection with such goods or products.

b.  Includes

(1) Warranties or representations made at any time with respect to the fitness, quality, durability, performance or use of **your product**; and

(2) The providing of or failure to provide warnings or instructions.

c.  Does not include vending machines or other property rented to or located for the use of others but not sold.

22. **Your work:**

a.  Means:

(1) Work or operations performed by you or on your behalf; and

(2) Materials, parts or equipment furnished in connection with such work or operations.

b.  Includes

(1) Warranties or representations made at any time with respect to the fitness, quality, durability, performance or use of **your work**, and

(2) The providing of or failure to provide warnings or instructions.

# MultiCover® - CG 71 58 12 03
Policy Amendment(s) Commercial General Liability Coverage Form

Your Commercial General Liability Coverage Form is revised as follows:

1. **Broadened Named Insured**

   A. SECTION II - WHO IS AN INSURED, item 3., is replaced by the following:

      3. Any organization that you own at the inception of this policy, or newly acquire or form during the policy period, and over which you maintain during the policy period majority ownership or majority interest, will qualify as a Named Insured if:

         a. There is no other similar insurance available to that organization; and

         b. The first Named Insured shown in the Declarations has the responsibility of placing insurance for that organization; and

         c. That organization is incorporated or organized under the laws of the United States of America.

      However:

      (1) Coverage under this provision 3 is afforded only until the next occurring annual anniversary of the beginning of the policy period shown in the Declarations, or the end of the policy period, whichever is earlier; and

      (2) Coverage A does not apply to **bodily injury** or **property damage** that occurred before you acquired or formed the organization; and

   (3) Coverage B does not apply to **personal and advertising injury** arising out of an offense committed before you acquired or formed the organization.

   B. SECTION II - WHO IS AN INSURED, the last paragraph, is replaced by the following:

      No person or organization is an insured with respect to the conduct of any current or past partnership, joint venture, or limited liability company that is not shown as a Named Insured in the Declarations. However, this does not apply to a limited liability company that meets all of the conditions in Section II - Who Is An Insured, item 3., above.

2. **Additional Insured**

   SECTION II - WHO IS AN INSURED, subsection 2.e. is added as follows:

   e. Any person or organization is included as an additional insured, but only to the extent such person or organization is held liable for **bodily injury, property damage** or **personal and advertising injury** caused by your acts or omissions. With respect to the insurance afforded to such insured, all of the following additional provisions apply:

      (1) You and such person or organization have agreed in a written **insured contract** that such person or organization be added as an additional insured under this policy;

      (2) The **bodily injury, property damage** or **personal and advertising injury** for which said person or organization is held liable occurs subsequent to the execution of such **insured contract**;

This Form must be attached to Change Endorsement when issued after the policy is written.

One of the **Fireman's Fund Insurance Companies** as named in the policy

Secretary

President

CG7158 12-03R
Includes copyrighted material of Insurance Services Office, Inc. with its permission.

Page 1 of 6

(3) The most we will pay is the lesser of either the Limits of Insurance shown in the Declarations or the limits of insurance required by the **insured contract**;

(4) Such person or organization is an insured only with respect to:

(a) Their ownership, maintenance, or use of that part of the premises, or land, owned by, rented to, or leased to you, except such person or organization is not an insured with respect to structural alterations, new construction or demolition operations performed by or on behalf of such person or organization;

(b) Your ongoing operations performed for that insured;

(c) Their financial control of you, except such person or organization is not an insured with respect to structural alterations, new construction or demolition operations performed by or on behalf of such person or organization;

(d) The maintenance, operation or use by you of equipment leased to you by such person or organization;

(e) Operations performed by you or on your behalf and for which a state or political subdivision has issued a permit, provided such operations are not performed for such state or political subdivision, and are not included within the **products-completed operations hazard**;

(5) This insurance does not apply to **bodily injury, property damage, personal and advertising injury, occurrence** or offense:

(a) Which takes place at a particular premises after you cease to be a tenant of that premises;

(b) Which takes place after all work, including materials, parts or equipment furnished in connection with such work to be performed by or on

behalf of the additional insured at the site of the covered operations, has been completed;

(c) Which takes place after that portion of **your work** out of which the injury or damage arises has been put to its intended use by any other person or organization other than another contractor or subcontractor engaged in performing operations for a principal as part of the same project;

(d) Which takes place after the expiration of any equipment lease to which (4)(d) above applies;

(6) With respect to architects, engineers or surveyors, coverage does not apply to **bodily injury, property damage** or **personal and advertising injury** arising out of the rendering or failure to render any professional services by or for you, including:

(a) The preparing, approving, or failing to prepare or approve, maps, shop drawings, opinions, reports, surveys, field orders, change orders, or drawings and specifications;

(b) Supervisory, inspection, architectural, or engineering services.

However, if an Additional Insured endorsement is attached to this policy that specifically names a person or organization as an insured, then this subsection 2.e. does not apply to such person or organization.

3.  **Additional Insured - Vendors**

Unless the **products-completed operations hazard** is excluded from this policy, SECTION II - WHO IS AN INSURED, item 2.f. is added as follows:

f.  Any vendor of yours is included as an additional insured, but only with respect to **bodily injury** or **property damage** caused by **your products** which are distributed or sold in the regular course of the vendor's business, subject to the following additional exclusions:

(1) The insurance afforded the vendor does not apply to:

CG7158 12-03R
Includes copyrighted material of Insurance Services Office, Inc. with its permission.

Page 2 of 6

(a) **Bodily injury** or **property damage** for which the vendor is obligated to pay damages by reason of the assumption of liability in a contract or agreement. This exclusion does not apply to liability for damages that the vendor would have in the absence of the contract or agreement;

(b) Any express warranty unauthorized by you;

(c) Any physical or chemical change in the product made intentionally by the vendor;

(d) Repackaging, unless unpacked solely for the purpose of inspection, demonstration, testing, or the substitution of parts under instructions from the manufacturer, and then repackaged in the original container;

(e) Any failure to make such inspections, adjustments, tests or servicing as the vendor has agreed to make or normally undertakes to make in the usual course of business, in connection with the distribution or sale of the products;

(f) Demonstration, installation, servicing or repair operations, except such operations performed by the vendor in full compliance with the manufacturer's written instructions at the vendor's premises in connection with the sale of the product;

(g) Products which, after distribution or sale by you, have been labeled or relabeled or used as a container, part or ingredient of any other thing or substance by or for the vendor; or

(h) **Bodily injury** or **property damage** arising out of the liability of the vendor for its own acts or omissions or those of its employees or anyone else acting on its behalf.

(2) This insurance does not apply to any insured person or organization from whom you have acquired such products or any ingredient, part or container, entering into, accompanying or containing such products.

However, if an Additional Insured - Vendors endorsement is attached to this policy that specifically names a person or organization as an insured, then this subsection 2.f. does not apply to that person or organization.

4. **Waiver of Subrogation**

SECTION IV - COMMERCIAL GENERAL LIABILITY CONDITIONS, item 8., is replaced by the following:

8. Transfer of Rights of Recovery Against Others to Us and Blanket Waiver of Subrogation

a. If the insured has rights to recover all or part of any payment we have made under this Coverage Part, those rights are transferred to us. The insured must do nothing after the loss to impair those rights. At our request, the insured will bring **suit** or transfer those rights to us and help us enforce them.

b. If required by a written **insured contract** executed prior to the **occurrence** or offense, we waive any right of recovery we may have against any person or organization named in such **insured contract**, because of payments we make for injury or damage arising out of your operations or **your work** for that person or organization.

5. **Cancellation - 120 Days**

Common Policy Conditions endorsement IL0017, A. Cancellation, item 2.b. is replaced by the following:

b. 120 days before the effective date of cancellation if we cancel for any other reason.

6. **Liberalization**

SECTION IV - COMMERCIAL GENERAL LIABILITY CONDITIONS , the following is added:

**Liberalization**

If we adopt a change in our forms or rules which would broaden the coverage provided by any form that is a part of this policy without an extra

premium charge, the broader coverage will apply to this policy. This extension is effective upon the approval of such broader coverage in your state.

7. **Fire, Explosion, Sprinkler Leakage, or Lightning Legal Liability Coverage**

   A. SECTION I - COVERAGES, COVERAGE A BODILY INJURY AND PROPERTY DAMAGE LIABILITY, 2. Exclusions, the last paragraph, is replaced by the following:

   Exclusions c. through n. do not apply to damage by fire, explosion, sprinkler leakage, or lightning to premises while:

   1. Rented to you;

   2. Temporarily occupied by you with the permission of the owner; or

   3. Managed by you under a written agreement with the owner.

   A separate limit of insurance applies to this coverage as described in Section III - LIMITS OF INSURANCE.

   B. SECTION III - LIMITS OF INSURANCE, item 6., is replaced by the following:

   6. Subject to 5. above, the Damage to Premises Rented To You Limit shown in the Declarations, for **property damage** to any one premises while rented to you, or in the case of damage by fire, explosion, sprinkler leakage, or lightning while rented to you, temporarily occupied by you with the permission of the owner, or managed by you under a written agreement with the owner, is the greater of:

      a. $1,000,000 Any One Premises; or

      b. The Damage To Premises Rented To You Limit shown in the Declarations.

   C. SECTION IV - COMMERCIAL GENERAL LIABILITY CONDITIONS, 4. Other Insurance, b. Excess Insurance, (1), items (b) and (c), are replaced by the following:

      (b) That is Fire, Explosion, Sprinkler Leakage, or Lightning insurance for premises

   while rented to you, temporarily occupied by you with permission of the owner, or managed by you under a written agreement with the owner;

      (c) That is insurance purchased by you to cover your liability as a tenant for **property damage** to premises rented to you, temporarily occupied by you with the permission of the owner, or managed by you under a written agreement with the owner; or

   D. SECTION V - DEFINITIONS, 9. **Insured Contract**, item a., is replaced by the following:

      a. A contract for a lease of premises. However, that portion of the contract for a lease of premises that indemnifies any person or organization for damage by fire, explosion, sprinkler leakage, or lightning to premises while rented to you, temporarily occupied by you with permission of the owner, or managed by you under a written agreement with the owner, is not an **insured contract**;

8. **Non-Owned or Chartered Watercraft**

   SECTION I - COVERAGES, COVERAGE A BODILY INJURY AND PROPERTY DAMAGE LIABILITY, 2. Exclusions, item g. Aircraft, Auto Or Watercraft, item (2), is replaced by the following:

   (2) A watercraft you do not own that is:

      (a) Less than 51 feet long; and

      (b) Not being used for public transportation or as a common carrier;

9. **Chartered Aircraft**

   SECTION I - COVERAGES, COVERAGE A BODILY INJURY AND PROPERTY DAMAGE LIABILITY, 2. Exclusions, g. Aircraft, Auto Or Watercraft, item (6), is added as follows:

   (6) An aircraft in which you have no ownership interest and that you have chartered with crew.

10. **Coverage Territory - Broadened**

    SECTION V - DEFINITIONS, item 4.a., is replaced by the following:

CG7158 12-03R
Includes copyrighted material of Insurance Services Office, Inc. with its permission.

Page 4 of 6

a.  The United States of America (including its territories and possessions), Puerto Rico, Canada, Bermuda, the Bahamas, The Cayman Islands, and the British Virgin Islands;

**11. Personal and Advertising Injury - Contractual**

Unless **personal and advertising injury** is excluded from this policy the following applies:

SECTION I - COVERAGES, COVERAGE B, 2. Exclusions, item e., is deleted.

**12. Fellow Employee Coverage**

SECTION II - WHO IS AN INSURED, 2.a., item (1) is replaced by the following:

**(1)  Personal and advertising injury:**

However, subsections (a), (b), (c) and (d) of item (1) remain unchanged.

**13. Bodily Injury Definition - Broadened**

SECTION V - DEFINITIONS, 3. **Bodily Injury** is replaced by the following:

**Bodily injury** means bodily injury, sickness, or disease sustained by a person including death or mental anguish resulting from any of these at any time. Mental anguish means any type of mental or emotional illness or disease.

**14. Unintentional Failure to Disclose Hazards**

SECTION IV - COMMERCIAL GENERAL LIABILITY CONDITIONS, item 6. Representations, the following is added:

d.  If you unintentionally fail to disclose any hazards existing at the inception date of this policy, we will not deny coverage under this Coverage Form because of such failure. However, this provision does not affect our right to collect additional premium or exercise our right of cancellation or non-renewal.

**15. Supplementary Payments - Increased Limits**

SECTION I - COVERAGES, SUPPLEMENTARY PAYMENTS - COVERAGES A AND B, items 1.b. and 1.d., are replaced by the following:

b.  The cost of bail bonds required because of accidents or traffic law violations arising out of the use of any vehicle to which the Bodily Injury Liability Coverage applies. We do not have to furnish these bonds.

d.  All reasonable expenses incurred by the insured at our request to assist us in the investigation or defense of the claim or **suit**, including substantiated loss of earnings up to $500 a day because of time off from work.

**16. Duties in the Event of an Occurrence, Offense, Claim, or Suit - Amended**

SECTION IV - COMMERCIAL GENERAL LIABILITY CONDITIONS, items 2.a. and 2.b., are replaced with the following:

a.  You must see to it that we or any licensed agent of ours are notified of a General Liability **occurrence** or offense which may result in a claim as soon as practicable after it becomes known to:

(1)  You, if you are an individual;

(2)  Your partner or member, if you are a partnership or joint venture;

(3)  Your member, if you are a limited liability company;

(4)  Your executive officer if you are an organization other than a partnership, joint venture or limited liability company; or

(5)  Your authorized representative or insurance manager.

Knowledge of an **occurrence** or offense by persons other than those listed above does not imply that those listed above also have such knowledge.

b.  To the extent possible, notice should include:

(1)  How, when, and where the **occurrence** or offense took place;

(2)  The names and addresses of any injured persons and witnesses; and

(3)  The nature and location of any injury or damage arising out of the **occurrence** or offense.

**17. Non Employment Discrimination Liability**

Unless **personal and advertising injury** is excluded from this policy the following applies:

CG7158 12-03R
Includes copyrighted material of Insurance Services Office, Inc. with its permission.

Page 5 of 6

A.  SECTION V - DEFINITIONS, 14. **Personal and advertising injury**, item h. is added as follows:

   h.  **Discrimination**.

B.  SECTION V - DEFINITIONS, item 23. is added as follows:

   23.  **Discrimination** means the unlawful treatment of a person or class of persons because of their specific race, color, religion, gender, age, or national origin in comparison to one or more persons who are not members of the specified class.

C.  SECTION I - COVERAGES, COVERAGE B PERSONAL AND ADVERTISING INJURY LIABILITY, 2. Exclusions, the following are added:

   p.  **Discrimination** directly or indirectly related to the past employment, employment or prospective employment of any person or class of persons by any insured;

   q.  **Discrimination** directly or indirectly related to the sale, rental, lease or sublease or prospective sale, rental, lease or sublease of any dwelling, permanent lodging, or premises by or at the direction of any insured;

   r.  **Discrimination**, if insurance thereof is prohibited by law; or

   s.  Fines, penalties, specific performance, or injunctions levied or imposed by a governmental entity, governmental code, law, or statute because of **discrimination**.

18.  **Medical Payments**

   Unless COVERAGE C MEDICAL PAYMENTS, or the **products-completed operations hazard** has been excluded from this policy the following applies:

A.  SECTION I - COVERAGES, COVERAGE C MEDICAL PAYMENTS, 2. Exclusions, item f., is replaced by the following:

   f.  **Products-Completed Operations Hazard**

      Included within the **products-completed operations hazard**. However, this exclusion does not apply to expenses for dental services.

B.  Section I - COVERAGES, COVERAGE C MEDICAL PAYMENTS, is amended to include item 3. as follows:

   3.  Limit of Insurance

      The Medical Expense Limit of Insurance shall be the greater of:

      a.  $10,000 Any One Person; or

      b.  The amount shown in the Declarations.

CG7158 12-03R
Includes copyrighted material of Insurance Services Office, Inc. with its permission.

Page 6 of 6

# Exclusion - Violation of Statutes That Govern E-Mails, Fax, Phone Calls Or Other Methods of Sending Material or Information - CG 00 67 03 05

Policy Amendment(s) Commercial General Liability

**This endorsement modifies insurance provided under the following:**

**Commercial General Liability Coverage Part**

A. The following exclusion is added to Paragraph 2., **Exclusions of Section I - Coverage A - Bodily Injury And Property Damage Liability:**

 2. Exclusions

 This insurance does not apply to:

 **Distribution of Material In Violation of Statutes**

 **Bodily injury or property damage** arising directly or indirectly out of any action or omission that violates or is alleged to violate:

 a. The Telephone Consumer Protection Act (TCPA), including any amendment of or addition to such law; or

 b. The CAN-SPAM Act of 2003, including any amendment of or addition to such law; or

 c. Any statute, ordinance or regulation, other than the TCPA or CAN-SPAM Act of 2003, that prohibits or limits the sending, transmitting, communicating or distribution of material or information.

B. The following exclusion is added to Paragraph 2., **Exclusions of Section I - Coverage B - Personal And Advertising Injury Liability:**

 2. Exclusions

 This insurance does not apply to:

 **Distribution of Material In Violation of Statutes**

 **Personal and advertising injury** arising directly or indirectly out of any action or omission that violates or is alleged to violate:

 a. The Telephone Consumer Protection Act (TCPA), including any amendment of or addition to such law; or

 b. The CAN-SPAM Act of 2003, including any amendment of or addition to such law; or

 c. Any statute, ordinance or regulation, other than the TCPA or CAN-SPAM Act of 2003, that prohibits or limits the sending, transmitting, communicating or distribution of material or information.

This Form must be attached to Change Endorsement when issued after the policy is written.

One of the **Fireman's Fund Insurance Companies** as named in the policy

Secretary

President

CG0067 3-05
Copyright, ISO Properties, Inc., 2004

# EXHIBIT C

**Declarations**

**THE FUND UMBRELLA®**

**POLICY NUMBER:** XAU-000-9908-9328

**POLICY PERIOD:** FROM 02/15/07 TO 02/15/08
(12:01 A.M. Standard time at the address
of the Named Insured as stated herein)

**FIREMAN'S FUND INSURANCE COMPANIES**

Coverage is provided in the following
company, a stock company.

01  Fireman's Fund Insurance
    Company

**NAMED INSURED AND MAILING ADDRESS:**
FOGO DE CHAO CHURRASCARIA
15028 BELTWAY DR
ADDISON, TX 75001

In return for the payment of the premium, and subject to all the terms of this
policy, we agree with you to provide the insurance as stated in this policy.

LIMITS OF INSURANCE
$10,000,000  Each Occurrence          $10,000,000  Aggregate

PREMIUM

Basis of premium:  Flat charge

Advance Premium: $37,405      Annual Minimum Premium:  $37,405
includes Terrorism Risk Insurance Act - Certified Acts Coverage:    $734

SCHEDULE OF PRIMARY INSURANCE

This schedule is described within Form No. 178300-06-92 which forms a part of
this policy's declarations.

SCHEDULE OF ENDORSEMENTS

This schedule is described within Form No. 178250-04-04 which forms a
part of this policy's declarations.

| Date of Issue:<br>02/15/2007 | Countersignature   of Authorized  Agent: |
|---|---|

This declarations   page is issued  in conjunction  with  and forms  a part of Policy Form 5400 10-03.

ESRDEC13-98 3030

## SCHEDULE OF PRIMARY INSURANCE - 178300-06-92

The schedule of Primary Insurance is completed to read as follows:

COMMERCIAL GENERAL LIABILITY

  Company:     FIREMAN'S FUND INSURANCE
  Policy No:    AS ASSIGNED BY COMPANY
  Expiration Date: 02/15/2008

                                          LIMITS OF LIABILITY

  General Aggregate Limit
    (Other Than Products-Completed Operations)  $2,000,000
  Products-Completed Operations Aggregate Limit  $2,000,000
          Personal & Advertising Injury Limit  $1,000,000
                  Each Occurrence Limit  $1,000,000

  INCLUDES LIQUOR LIABILITY @ $1MM/$2MM

AUTOMOBILE LIABILITY

  Company:     FIREMAN'S FUND INSURANCE
  Policy No:    AS ASSIGNED BY COMPANY
  Expiration Date: 02/15/2008

                                          LIMITS OF LIABILITY

  Bodily Injury and Property Damage
                Combined Single Limit  $1,000,000  Any One Accident

  HIRED & NON-OWNED ONLY

EMPLOYER'S LIABILITY

  Company:     LIBERTY MUTUAL INSURANCE
  Policy No:    WC2191429800
  Expiration Date: 03/01/2007

                                          LIMITS OF LIABILITY

              Bodily Injury by Accident  $1,000,000  Each Accident
              Bodily Injury by Disease  $1,000,000  Policy Limit
              Bodily Injury by Disease  $1,000,000  Each Employee

ESRSCHP1-97

**178250 04 04**            # SCHEDULE OF ENDORSEMENTS

178386 10 02 TX TEXAS AMENDATORY

178575 05 04       SILICA PARTICLES EXCLUSION

178587 04 06       DISCLOSURE OF PREMIUM AND ESTIMATED PREMIUM FOR CERTIFIED ACTS
                   OF TERRORISM COVERAGE (PURSUANT TO TERRORISM RISK INSURANCE ACT
                   OF 2002)

178717 10 01       AUTO EXCLUSION - COVERAGE B

178724 10 03       CARE, CUSTODY OR CONTROL OF REAL AND PERSONAL PROPERTY EXCLUSION

178731 03 98       CROSS SUITS EXCLUSION (ANY INSURED)

178735 03 98R      DESIGNATED PERSON OR ORGANIZATION EXCLUSION - COVERAGE B

178754 10 03       EMPLOYEE INJURY EXCLUSION - COVERAGE B

178771 03 98       LEAD EXCLUSION

178862 10 03       LIQUOR LIABILITY EXCLUSION - COVERAGE B

178950 04 02R      FUNGI OR BACTERIA EXCLUSION

178995 05 03       LIMITS OF INSURANCE - NON CONCURRENCY OF TERM - COVERAGE A

179020 12 04       ADDITIONAL POLICY PROVISIONS

179033 12 04       VIOLATION OF STATUTES EXCLUSION (EMAILS, FAX, PHONE CALLS OR
                   OTHER METHODS OF SENDING MATERIAL OR INFORMATION)

# Violation of Statutes Exclusion (E-Mails, Fax, Phone Calls or Other Methods of Sending Material or Information) - 179033 12 04
Policy Amendment - Umbrella Policy - Excess Liability Policy

The policy does not apply to any liability arising directly or indirectly out of any action or omission that violates or is alleged to violate:

A. The Telephone Consumer Protection Act (TCPA), including any amendment of or addition to such law; or

B. The CAN-SPAM Act of 2003, including any amendment of or addition to such law; or

C. Any statute, ordinance or regulation, other than the TCPA or CAN-SPAM Act of 2003, that prohibits or limits the sending, transmitting, communication or distribution of material or information.

All other terms and conditions of the policy remain unchanged.

This Form must be attached to Change Endorsement when issued after the policy is written.
One of the Fireman's Fund Insurance Companies as named in the policy

Secretary

President

179033 12-04
Includes copyrighted material of Insurance Services Office, Inc., with its permission.

# QUICKREFERENCE

## THE FUND UMBRELLA

This insurance is provided by one of THE FIREMAN'S FUND INSURANCE COMPANIES as shown on the Declarations Page. Our mailing address is: P.O. Box 777, Novato, California 94998.

At inception, The Fund Umbrella policy consists of: the Declarations, The Fund Umbrella policy form, and the endorsements listed on the Declarations.

DECLARATIONS PAGE
    Policy Period; Named Insured; Limits of Insurance; Premium; Schedule of Primary Insurance; Listing of Endorsements

BEGINNING ON PAGE

SECTION I. EXCESS LIABILITY - COVERAGE A
    A.   Insuring Agreement ...................................................................................... 1
    B.   When We Will Have a Duty to Defend ............................................................. 1
    C.   Exclusions ................................................................................................. 2
    D.   Who Is An Insured ...................................................................................... 6
    E.   Limits of Insurance ..................................................................................... 6

SECTION II. UMBRELLA LIABILITY - COVERAGE B
    A.   Insuring Agreement ...................................................................................... 7
    B.   When We Will Have a Duty to Defend ............................................................. 8
    C.   Exclusions ................................................................................................. 9
    D.   Who Is An Insured ...................................................................................... 13
    E.   Limits of Insurance ..................................................................................... 15

SECTION III. SUPPLEMENTARY PAYMENTS ....................................................... 16

SECTION IV. CONDITIONS
    A.   Appeals ..................................................................................................... 16
    B.   Bankruptcy ................................................................................................ 16
    C.   Cancellation .............................................................................................. 16
    D.   Changes .................................................................................................... 17
    E.   Conformity with Laws .................................................................................. 17
    F.   Duties of Insureds in the Event of Occurrence, Claim or Suit ............................ 17
    G.   Maintenance of Primary Insurance ................................................................ 18
    H.   Payment of Loss Under this Policy ................................................................ 18
    I.   Premium .................................................................................................... 18
    J.   Titles or Captions ....................................................................................... 18
    K.   Transfer of Your Rights and Duties Under this Policy ...................................... 18
    L.   Subrogation ............................................................................................... 19
    M.   Other Insurance ......................................................................................... 19
    N.   Separation of Insureds ................................................................................ 19
    O.   Inspection and Audit ................................................................................... 19
    P.   Unintentional Failure to Disclose .................................................................. 20
    Q.   Waiver of Subrogation Same as Primary ....................................................... 20

SECTION V. NUCLEAR ENERGY LIABILITY EXCLUSION ...................................... 20

SECTION VI. DEFINITIONS ........................................................................... 22

Read the entire policy carefully to determine rights, duties and what is and is not covered.

The words "you" and "your" refer to the **Named Insured** shown in the Declarations. The words "we", "us" and "our" refer to the company providing this insurance. Other words and phrases that are boldfaced have special meaning. Refer to the DEFINITIONS and WHO IS AN INSURED sections.

By accepting this policy, you agree that:

1. The statements in the Declarations and Application are your agreements and representations;

2. Those statements are accurate and complete;

3. This policy is issued and continued in reliance upon the truth of those representations; and

4. This policy contains all agreements existing between you, us, and our agents, relating to this insurance.

# SECTION I. EXCESS LIABILITY - COVERAGE A

## A. COVERAGE A - INSURING AGREEMENT

1. We will pay on behalf of any **Insured** those sums in excess of **Primary Insurance** that any **Insured** becomes legally obligated to pay as damages or a **Covered Pollution Cost or Expense** provided that such damages and **Covered Pollution Cost or Expense**:

   a. Are covered by **Primary Insurance**;

   b. Arise from injury or damage that occurs, or from an offense committed, during our Policy Period; and

   c. Take place anywhere in the world.

2. The terms and conditions of **Primary Insurance** apply to Coverage A, unless they are inconsistent with any provision of this policy.

3. The amount we will pay is limited as described in Limits of Insurance.

4. a. Subject to Section I.B. and Section I.E.5., we will only pay defense expenses we incur in addition to the applicable Limits of Insurance.

   b. If we are prevented by law from investigating or settling any claim or defending any **Insured** against any **Suit**, we will pay any expense incurred by any **Insured** with our consent.

## B. COVERAGE A - WHEN WE WILL HAVE A DUTY TO DEFEND

1. We will have the right and duty to defend any **Insured** against any **Suit** seeking damages or a **Covered Pollution Cost or Expense** to which Coverage A applies but only:

   a. After the applicable limits of insurance of **Primary Insurance** and **Other Insurance** cease to apply because of exhaustion by the payment of judgments or settlements, or because of exhaustion by the payment of defense expenses by the terms of that policy; and

   b. If no **Other Insurance** affording a defense or indemnity against such a **Suit** is available to any **Insured**.

   We will pay only those defense expenses we incur.

5400 10-03

2. We have the right but not the duty, to associate with **Primary Insurers** in the defense and control of any **Occurrence**, claim or **Suit** to which we think Coverage A may apply.

3. At our discretion we may:

   a. Investigate any **Occurrence**, claim or **Suit**; or

   b. Settle any claim or **Suit**.

4. We have no duty to defend any **Insured** against any **Suit** seeking damages or a **Covered Pollution Cost or Expense**:

   a. To which Coverage A does not apply;

   b. After our applicable Limits of Insurance have been exhausted by the payment of judgments or settlements, or exhausted by the payment of defense expenses or reimbursements in the same manner as the terms of **Primary Insurance** or **Other Insurance**; or

   c. To which **Primary Insurance** or **Other Insurance**, by its terms, has no duty to defend provided that such **Primary Insurance** or **Other Insurance** does not defend for reasons other than the exhaustion of its limits of insurance.

## C. COVERAGE A - EXCLUSIONS

Coverage A of this policy does not apply:

1. **ASBESTOS** - To any liability arising, in whole or in part, out of or in any way related to **Asbestos**.

2. **E.R.I.S.A.** - To any liability of any **Insured** under, or any claim based upon:

   a. The Employees' Retirement Income Securities Act (E.R.I.S.A.) of 1974 and any amendment thereto; or

   b. Similar provisions of any federal, state, or local statutory law or common law.

3. **WORKERS COMPENSATION AND SIMILAR LAWS** - To any obligation of any **Insured** under a Law of:

   a. Workers compensation;

   b. Disability benefits;

   c. Unemployment compensation; or

   d. Any similar law.

4. **POLLUTION**

   a. To any liability arising out of the actual, alleged or threatened, discharge, dispersal, seepage, migration, release or escape of **Pollutants**:

      (1) At or from any premises, site or location which is or was at any time:

          (a) Owned or occupied by; or

          (b) Rented or loaned to;

          any **Insured**;

      (2) At or from any premises, site or location which is or was at any time used by or for:

5400 10-03

(a) Any **Insured**; or

(b) Others;

for the handling, storage, disposal, processing or treatment of waste;

(3) Which are or were at any time transported, handled, stored, treated, disposed of, or processed as waste by or for:

(a) Any **Insured**; or

(b) Any person or organization for whom you may be legally responsible;

(4) At or from any premises, site or location on which any **Insured**, or any contractors or subcontractors working directly or indirectly on any **Insured's** behalf are performing operations:

(a) If the **Pollutants** are brought on or to such premises, site or location, in connection with such operations by such **Insured**, contractor or subcontractor; or

(b) If the operations are to test for, monitor, clean up, remove, contain, treat, detoxify or neutralize, or in any way respond to, or assess the effects of, **Pollutants**;

(5) That are, or that are contained in, any property that is:

(a) Being transported or towed by, handled or handled for movement into, onto or from; any auto covered by **Primary Insurance**;

(b) Otherwise in the course of transit by or on behalf of any **Insured**; or

(c) Being stored, disposed of, treated or processed, in or upon any auto covered by **Primary Insurance**; or

(6) (a) Before the **Pollutants**, or any property in which the **Pollutants** are contained, are moved from the place where they are accepted by any **Insured** for movement into or onto any auto covered by **Primary Insurance**; or

(b) After the **Pollutants**, or any property in which the **Pollutants** are contained, are moved from any auto covered by **Primary Insurance** to the place where they are finally delivered, disposed of or abandoned by any **Insured**.

b. To any loss, cost or expense arising out of any:

(1) Request, demand, order or statutory or regulatory requirement that any **Insured** or others:

(a) Test for, monitor, clean up, remove, contain, treat, detoxify or neutralize; or

(b) In any way respond to, or assess the effects of;

**Pollutants**; or

(2) Claim or suit by or on behalf of a governmental authority for damages because of:

(a) Testing for, monitoring, cleaning up, removing, containing, treating, detoxifying or neutralizing; or

(b) In any way responding to, or assessing the effects of;

**Pollutants**.

Page 3 of 28

This subsection 4.b. does not apply to:

(1) A **Covered Pollution Cost or Expense** to which Coverage A applies; or

(2) Liability for damages because of property damage that the **Insured** would have in the absence of such request, demand or order or statutory or regulatory requirement, or such claim or **Suit** by or on behalf of a governmental authority.

c. (1) HOSTILE FIRE - Subsections a.(1) and a.(4)(a) above do not apply to bodily injury or property damage arising out of heat, smoke or fumes from a **Hostile Fire**.

(2) MOBILE EQUIPMENT FUELS - Subsection a.(4)(a) above does not apply to bodily injury or property damage arising out of the escape of fuels, lubricants, or other operating fluids, which are needed to perform the normal electrical, hydraulic, or mechanical functions necessary for the operation of **Mobile Equipment** or its parts, if such fuels, lubricants or other operating fluids escape from a vehicle part designed to hold, store or receive them.

This exception does not apply if:

(a) The fuels, lubricants or other operating fluids are intentionally discharged, dispersed or released; or

(b) Such fuels, lubricants or other operating fluids are brought on or to the premises, site or location with the intent that they be discharged or released as part of the operations being performed by such **Insured**, contractor or subcontractor.

(3) AUTO FUELS - Subsection a.(5) above does not apply to fuels, lubricants, fluids, exhaust gasses or other similar **Pollutants**, that are needed for or result from the normal electrical, hydraulic or mechanical functioning of any auto or its parts, covered by **Primary Insurance** if:

(a) The **Pollutants** escape, seep, migrate, or are discharged, dispersed or released directly from an auto part designed by its manufacturer to hold, store, receive or dispose of such **Pollutants**; and

(b) The bodily injury, property damage or **Covered Pollution Cost or Expense** does not arise out of the operation of any equipment listed in subsections 6.(b) and (c) of definition J. of **Mobile Equipment**, under SECTION VI. DEFINITIONS.

(4) AUTO UPSET/OVERTURN/DAMAGE- Subsection a.(6) above does not apply to **Occurrences** that occur away from premises owned by or rented to any **Insured** with respect to **Pollutants** not in or upon any auto covered by **Primary Insurance** if:

(a) The **Pollutants** or any property in which the **Pollutants** are contained are upset, overturned or damaged as a result of the maintenance or use of any auto covered by **Primary Insurance**; and

(b) The discharge, dispersal, seepage, migration, release or escape of the **Pollutants** is caused directly by such upset, overturn or damage.

(5) PRODUCTS/COMPLETED OPERATIONS- Subsection a. above does not apply to bodily injury or property damage included within the products-completed operations hazard provided that your product or your work has not at any time been:

(a) Discarded, dumped, abandoned, thrown away; or

(b) Treated or handled as waste;

by anyone.

(6) BUILDING HEATING EQUIPMENT- Subsection a.(1) above does not apply to bodily injury if sustained within a building and caused by smoke, fumes, vapor or soot from equipment used to heat that building.

(7) PESTICIDE OR HERBICIDE APPLICATOR - With respect to pesticide or herbicide application by any **Insured**, subsection a.(4)(a) above does not apply if the operations meet all standards of any statute, ordinance, regulation or license requirement of any federal, state or local government which apply to those operations.

(8) CONTRACTORS- subsection a.(1) above does not apply to bodily injury or property damage for which you may be held liable if:

(a) You are a contractor; and

(b) The owner or lessee of such premises, site or location has been added to this policy as an additional **Insured** with respect to your ongoing operations performed for that additional **Insured** at that premises, site or location; and

(c) Such premises, site or location is not and never was owned or occupied by, or rented or loaned to, any **Insured**, other than the owner or lessee of that premises who has been added to the policy as an additional **Insured**.

(9) MATERIALS - Subsection a.(4)(a) above does not apply to bodily injury or property damage sustained within a building and caused by the release of gasses fumes or vapors from materials brought into that building in connection with operations being performed by you or on your behalf by a contractor or subcontractor.

5. **EMPLOYMENT PRACTICES** - To any liability arising out of any employment-related or personnel practices, policies, acts or omissions. This includes, but is not limited to:

a. Refusal to employ;

b. Termination of employment;

c. Coercion, criticism, demotion, failure to promote, evaluation, reassignment, discipline, defamation, self-defamation, harassment, humiliation, discrimination, libel, slander, false arrest and imprisonment, or violation of a person's right of privacy; or

d. Any consequential injury or damages as a result of a., b. or c. above.

This exclusion applies:

a. To all claims, demands, charges, complaints or **Suits** by any person(s) or organization(s) for damages because of such injury or liability, including damages for care and loss of services;

b. Whether any **Insured** may be held liable as an employer or in any other capacity either directly or indirectly related to employment; and

c. To any obligation to share damages with or repay someone else who must pay damages because of such injury or liability.

6. **WAR** - To any liability arising, directly or indirectly, out of:

a. War, including undeclared or civil war;

5400 10-03

   b.  Warlike action by a military force, including action in hindering or defending against an actual or expected attack, by any government, sovereign or other authority using military personnel or other agents; or

   c.  Insurrection, rebellion, revolution, usurped power, or action taken by governmental authority in hindering or defending against any of these.

## D. COVERAGE A - WHO IS AN INSURED

Each of the following is an **Insured** under Coverage A:

1.  NAMED INSURED- Any person or organization shown in the Named Insured section of our Declarations.

2.  NEWLY ACQUIRED OR FORMED ORGANIZATIONS- Any organization you newly acquire or form during our Policy Period. However, Coverage A does not apply to any injury, damage or **Occurrence**, which took place or was committed before you acquired or formed the organization.

3.  PERSONS OR ORGANIZATIONS INSURED IN PRIMARY POLICIES - Any person or organization that is an insured in **Primary Policies**. However, any person or organization that becomes an insured in **Primary Policies** after the inception date of our policy is an **Insured** under Coverage A of our policy only if, prior to the time of an **Occurrence**, you agreed in a written contract to provide such insurance as is afforded by Coverage A of this policy.

## E. COVERAGE A - LIMITS OF INSURANCE

1.  The Limits of Insurance shown in the Declarations and the terms below fix the most we will pay regardless of the number of:

   a.  Coverages provided by this policy;

   b.  **Insureds**;

   c.  Claims made or **Suits** brought; or

   d.  Persons or organizations making claims or bringing **Suits**.

2.  OCCURRENCE LIMIT

   a.  The "each occurrence" limit shown in our Declarations is the most we will pay under Coverages A and B combined, for the sum of damages and **Covered Pollution Cost or Expense** arising out of any one **Occurrence**.

      Any amount we pay for damages or a **Covered Pollution Cost or Expense** arising out of an **Occurrence** will reduce or exhaust the amount of our applicable aggregate Limit of Insurance available for payment of damages or a **Covered Pollution Cost or Expense** arising out of any other **Occurrence**.

   b.  Coverage A applies only in excess of the Limit of Insurance shown in our Schedule of Primary Insurance. But if a **Primary Policy** has a limit of insurance:

     (1)  Greater than the amount shown, our policy applies excess of the greater amount; or

     (2)  Less than the amount shown, our policy applies excess of the amount shown in our Schedule.

   c.  If the limit of insurance of a **Primary Policy** is:

5400 10-03

    (1) Reduced; or

    (2) Exhausted;

    by payment of judgments or settlements arising out of **Occurrences**, Coverage A will apply in excess of such reduced or exhausted limit of insurance.

3.  SAME BASIS AGGREGATE LIMIT - The Limit of Insurance shown in our Declarations as "aggregate" is the most we will pay under Coverage A for the sum of damages and **Covered Pollution Cost or Expense**. Our aggregate limit will apply only when a **Primary Policy** applies an aggregate limit, and will apply on the same basis as a **Primary Policy**.

4.  POLICY PERIOD EXTENSIONS- The Limits of Insurance of this policy apply separately to each consecutive annual period and to any remaining period of less than twelve (12) months, starting with the beginning of the Policy Period shown in the Declarations. However, if we extend our Policy Period after this policy is issued, we will consider the additional period as part of the last preceding annual period for purposes of determining the Limits of Insurance.

5.  SAME BASIS DEFENSE EXPENSES- If the limits of insurance of any **Primary Policy** or **Other Insurance** are reduced by defense expenses by the terms of that policy then any defense expense payments we make to defend any **Insured** or reimbursements we make to any **Insured** for defense expenses will reduce our applicable Limits of Insurance in the same manner.

## SECTION II. UMBRELLA LIABILITY - COVERAGE B

## A. COVERAGE B - INSURING AGREEMENT

1.  We will pay on behalf of any **Insured** those sums that any **Insured**:

   a.  Becomes legally obligated to pay as damages because of **Bodily Injury** or **Property Damage**, but only if:

     (1) The **Bodily Injury** or **Property Damage** occurs during our Policy Period;

     (2) The **Bodily Injury** or **Property Damage** is caused by an **Occurrence**; and

     (3) Prior to the Policy Period, no **Insured**, and no **Employee** authorized by you to give or receive notice of an **Occurrence** or claim, knew that the **Bodily Injury** or **Property Damage** had occurred, in whole or in part. If such an **Insured** or authorized **Employee** knew, prior to the Policy Period, that the **Bodily Injury** or **Property Damage** occurred, then any continuation, change or resumption of such **Bodily Injury** or **Property Damage** during or after the Policy Period will be deemed to have been known prior to the Policy Period.

   However, under this subsection A.1.a.:

     (1) **Bodily Injury** or **Property Damage** which occurs during the Policy Period and was not, prior to the Policy Period known to have occurred by any **Insured** or by any **Employee** authorized by you to give or receive notice of an **Occurrence** or claim, includes any continuation, change or resumption of that **Bodily Injury** or **Property Damage** after the end of the Policy Period.

     (2) **Bodily Injury** or **Property Damage** will be deemed to have been known to have occurred at the earliest time when any **Insured**, or any **Employee** authorized by you to give or receive notice of an **Occurrence** or claim:

      (a) Reports all, or any part, of the **Bodily Injury** or **Property Damage** to us or any other insurer;

      (b) Receives a written or verbal demand or claim for damages because of the **Bodily Injury** or **Property Damage**; or

      (c) Becomes aware by any other means that **Bodily Injury** or **Property Damage** has occurred or has begun to occur.

  b. Becomes legally obligated to pay as damages because of **Personal and Advertising Injury** but only if:

      (1) Caused by an offense arising out of your business; and

      (2) The offense was committed during our Policy Period.

      The Policy Period for this policy may be comprised of more than one consecutive annual period. However, whether or not this policy of insurance applies to more than one consecutive annual period the most we will pay for all damages for **Personal and Advertising Injury** arising out of an offense committed during one annual period is the Limits of Insurance available under that one annual period. This provision applies even if the **Personal and Advertising Injury** which arises from an offense committed during one annual period continues or progressively deteriorates into a subsequent annual period(s).

2. Coverage B does not apply to any claim or **Suit**:

  a. Which is covered by **Primary Insurance** or Coverage A of this policy; or

  b. Which would have been covered by **Primary Insurance** or Coverage A of this policy except for the exhaustion of the limits of such insurance.

3. Damages because of **Bodily Injury** include damages claimed by any person or organization for care, loss of services or death resulting at any time from the **Bodily Injury**.

4. Coverage B applies anywhere in the world.

5. The amount we will pay is limited as described in Limits of Insurance.

6. a. Subject to Section II.B. and Section II.E.5., we will only pay defense expenses we incur in addition to the applicable Limits of Insurance.

  b. If we are prevented by law from investigating or settling any claim or defending any **Insured** against any **Suit**, we will pay any expense incurred by any **Insured** with our consent.

## B. COVERAGE B - WHEN WE WILL HAVE A DUTY TO DEFEND

1. We will have the right and duty to defend any **Insured** against any **Suit**, seeking damages to which Coverage B applies, but only:

  a. If Coverage A or **Primary Insurance** does not apply or owe a duty of defense against such a **Suit**; and

  b. If no **Other Insurance** affording a defense or indemnity against such a **Suit** is available to any **Insured**.

  We will pay only those defense expenses we incur.

2. We have the right but not the duty, to associate with **Other Insurance** insurers in the defense and control of any **Occurrence**, claim or **Suit** to which we think Coverage B may apply.

3. At our discretion we may:

   a. Investigate any **Occurrence**, claim or **Suit**; and

   b. Settle any claim or **Suit**.

4. We have no duty to defend any **Insured** against any **Suit** seeking damages:

   a. To which Coverage B does not apply;

   b. After our applicable Limits of Insurance have been exhausted by the payment of judgments or settlements, or exhausted by the payment of defense expenses in the same manner as the terms of **Other Insurance**; or

   c. To which any **Other Insurance**, by its terms, has no duty to defend provided that such **Other Insurance** does not defend for reasons other than the exhaustion of its limits of insurance.

## C. COVERAGE B - EXCLUSIONS

Coverage B of this policy does not apply:

1. **AIRCRAFT** - To any liability arising out of the ownership, maintenance, operation, use, entrustment to others, loading or unloading of any aircraft:

   a. Owned, leased, hired, rented or borrowed by or on behalf of you; or

   b. Chartered without crew by or on behalf of you.

   This exclusion:

   a. Applies even if the claims against any **Insured** allege negligence or other wrongdoing in the supervision, hiring, employment, training or monitoring of others by that **Insured**; and

   b. Does not apply to liability assumed under an **Insured Contract**.

2. **PERSONAL AND ADVERTISING INJURY** - To **Personal and Advertising Injury**:

   a. Caused by or at the direction of the **Insured** with the knowledge that the act would violate the rights of another and would inflict **Personal and Advertising Injury**.

   b. Arising out of oral or written publication of material, if done by or at the direction of the **Insured** with knowledge of its falsity.

   c. Arising out of oral or written publication of material whose first publication took place before the beginning of the Policy Period.

   d. Arising out of a criminal act committed by or at the direction of the **Insured**.

   e. Arising out of a breach of contract, except an implied contract to use another's advertising idea in your **Advertisement**.

   f. Arising out of the failure of goods, products or services to conform with any statement of quality or performance made in your **Advertisement**.

   g. Arising out of the wrong description of the price of goods, products or services stated in your **Advertisement**.

5400 10-03

h.  Arising out of the infringement of copyright, patent, trademark, trade secret or other intellectual property rights. However, this exclusion does not apply to infringement, in your **Advertisement**, of copyright, trade dress or slogan.

i.  Committed by an **Insured** whose business is:

(1)  Advertising, broadcasting, publishing or telecasting;

(2)  Designing or determining content of web-sites for others; or

(3)  An internet search, access, content or service provider.

However, this exclusion i. does not apply to subsections 1., 2. and 3. of definition N. Personal and Advertising Injury, under SECTIONVI. DEFINITIONS.

For the purposes of this exclusion i., the placing of frames, borders or links, or advertising, for you or others anywhere on the Internet is not by itself, considered the business of advertising, broadcasting, publishing or telecasting.

j.  Arising out of an electronic chatroom or bulletin board the **Insured** hosts, owns, or over which the **Insured** exercises control.

k.  Arising out of the unauthorized use of another's name or product in your e-mail address, domain name or metatag, or any other similar tactics to mislead another's potential customers.

3.  **ASBESTOS** - To any liability arising, in whole or in part, out of or in any way related to **Asbestos**.

4.  **CONTRACTUAL LIABILITY** - To any liability for which any **Insured** is obligated to pay damages by reason of the assumption of liability in any contract or agreement. This exclusion does not apply to liability for damages:

a.  Assumed in a contract or agreement that is an **Insured Contract**, provided the **Bodily Injury, Personal and Advertising Injury** or **Property Damage** occurs after the execution of the contract or agreement; or

b.  That the **Insured** would have in the absence of the contract or agreement.

5.  **DAMAGE TO INSURED'S PROPERTY** - To **Property Damage** to property of one **Insured** in the care, custody or control of another **Insured**.

6.  **DAMAGE TO YOUR PRODUCT OR WORK** - To **Property Damage** to:

a.  **Your Product** arising out of it or any part of it; or

b.  **Your Work** arising out of it or any part of it and included in the **Products-Completed Operations Hazard**. This exclusion does not apply if the damaged work or the work out of which the damage arises was performed on your behalf by a subcontractor.

7.  **EMPLOYMENT PRACTICES** - To any liability arising out of any employment-related or personnel practices, policies, acts or omissions. This includes, but is not limited to:

a.  Refusal to employ;

b.  Termination of employment;

c.  Coercion, criticism, demotion, failure to promote, evaluation, reassignment, discipline, defamation, self-defamation, harassment, humiliation, discrimination, libel, slander, false arrest or imprisonment, and violation of a person's right of privacy; or

d.  Any consequential injury or damages as a result of a., b. or c. above.

This exclusion applies:

a.  To all claims, demands, charges, complaints or **Suits** by any person(s) or organization(s) for damages because of such injury or liability, including damages for care and loss of services;

b.  Whether any **Insured** may be held liable as an employer or in any other capacity either directly or indirectly related to employment; and

c.  To any obligation to share damages with or repay someone else who must pay damages because of such injury or liability.

8.  **E.R.I.S.A.** - To any liability of any **Insured** under, or any claim based upon:

a.  The Employees' Retirement Income Securities Act (E.R.I.S.A.) of 1974 and any amendment thereto; or

b.  Similar provisions of any federal, state, or local statutory law or common law.

9.  **EXPECTED OR INTENDED** - To **Bodily Injury** or **Property Damage** expected or intended from the standpoint of the **Insured**. This exclusion does not apply to **Bodily Injury** or **Property Damage** which results from the use of reasonable force to protect persons or property.

10. **IMPAIRED PROPERTY** - To **Property Damage** to **Impaired Property** or property that has not been physically injured arising out of:

a.  A defect, deficiency, inadequacy or dangerous condition in **Your Product** or **Your Work**; or

b.  A delay or failure by any **Insured** or anyone acting on any **Insured's** behalf to perform a contract or agreement in accordance with its terms.

This exclusion does not apply to the loss of use of other property arising out of sudden and accidental physical injury to **Your Product** or **Your Work** after it has been put to its intended use.

11. **WAR** - To any liability arising, directly or indirectly, out of:

a.  War, including undeclared or civil war;

b.  Warlike action by a military force, including action in hindering or defending against an actual or expected attack, by any government, sovereign or other authority using military personnel or other agents; or

c.  Insurrection, rebellion, revolution, usurped power, or action taken by governmental authority in hindering or defending against any of these.

12. **POLLUTION**

a.  To any liability arising out of the actual, alleged or threatened, discharge, dispersal seepage, migration, release or escape of **Pollutants**:

(1) At or from any premises, site or location which is or was at any time:

(a) Owned or occupied by; or

(b) Rented or loaned to;

any **Insured**;

    (2) At or from any premises, site or location which is or was at any time used by or for:

       (a) Any **Insured**; or

       (b) Others;

      for the handling, storage, disposal, processing or treatment of waste;

    (3) Which are or were at any time transported, handled, stored, treated, disposed of, or processed as waste by or for:

       (a) Any **Insured**; or

       (b) Any person or organization for whom you may be legally responsible; or

    (4) At or from any premises, site or location on which any **Insured**, or any contractors or subcontractors working directly or indirectly on any **Insured's** behalf are performing operations:

       (a) If the **Pollutants** are brought on or to such premises, site or location, in connection with such operations by such **Insured**, contractor or subcontractor; or

       (b) If the operations are to test for, monitor, clean up, remove, contain, treat, detoxify or neutralize, or in any way respond to, or assess the effects of **Pollutants**;

    (5) That are, or that are contained in, any property that is:

       (a) Being transported or towed by, handled, or handled for movement into, onto, or from, any **Auto** covered by Coverage B;

       (b) Otherwise in the course of transit by or on behalf of any **Insured**; or

       (c) Being stored, disposed of, treated or processed in or upon any **Auto** covered by Coverage B;

    (6) (a) Before the **Pollutants** or any property in which the **Pollutants** are contained are moved from the place where they are accepted by any **Insured** for movement into or onto any **Auto** covered by Coverage B; or

       (b) After the **Pollutants** or any property in which the **Pollutants** are contained are moved from any **Auto** covered by Coverage B to the place where they are finally delivered, disposed of or abandoned by any **Insured**.

  b. To any loss, cost or expense arising out of any:

    (1) Request, demand, order or statutory or regulatory requirement that any **Insured** or others:

       (a) Test for, monitor, clean up, remove, contain, treat, detoxify or neutralize; or

       (b) In any way respond to, or assess the effects of;

      **Pollutants**; or

    (2) Claim or suit by or on behalf of a governmental authority for damages because of:

       (a) Testing for, monitoring, cleaning up, removing, containing, treating, detoxifying or neutralizing; or

       (b) In any way responding to, or assessing the effects of;

**Pollutants.**

This subsection 12.b. does not apply to liability for damages because of **Property Damage** that the **Insured** would have in the absence of such request, demand, order or statutory or regulatory requirement, or such claim or **Suit** by or on behalf of a governmental authority.

c.  HOSTILE FIRE - Subsections a.(1) and a.(4)(a) above do not apply to **Bodily Injury** or **Property Damage** arising out of heat, smoke or fumes from a **Hostile Fire**.

13. **RECALL OF PRODUCTS** - To damages claimed for any loss, cost or expense incurred by any **Insured** or others for the loss of use, withdrawal, recall, inspection, repair, replacement, adjustment, removal or disposal of:

a.  **Your Product;**

b.  **Your Work;** or

c.  **Impaired Property;**

if such product, work or property is withdrawn or recalled:

a.  From the market; or

b.  From use;

by any person or organization because of a known or suspected defect, deficiency, inadequacy or dangerous condition in it.

14. **WORKERS COMPENSATION AND SIMILAR LAWS** - To any obligation of any **Insured** under a law of:

a.  Workers compensation;

b.  Disability benefits;

c.  Unemployment compensation; or

d.  Any similar laws.

## D.  COVERAGE B - WHO IS AN INSURED

1.  Each of the following is an **Insured** under Coverage B:

a.  NAMED INSURED- Any person or organization shown in the Named Insured section of our Declarations and:

(1) If you are an individual, you and your spouse are **Insureds**, but only with respect to the conduct of a business of which you are the sole owner.

(2) If you are a partnership or joint venture, you, your members, your partners and their spouses are **Insureds**, but only with respect to the conduct of your business.

(3) If you are a limited liability company, your members are **Insureds**, but only with respect to the conduct of your business.  Your managers are **Insureds**, but only with respect to their duties as your managers.

(4) If you are an organization other than a partnership, joint venture or limited liability company, your executive officers and directors are **Insureds**, but only with respect to their duties as your officers or directors.  Your stockholders are **Insureds**, but only with respect to their liability as stockholders.

    (5) If you are a trust, your trustees are **Insureds**, but only with respect to their duties as trustees.

b.  NEWLY ACQUIRED OR FORMED ORGANIZATIONS - Any organization you acquire or form during our Policy Period other than a partnership, joint venture or limited liability company. But Coverage B applies only:

    (1) If you maintain majority ownership or majority interest in such organization; and

    (2) To an injury, damage or **Occurrence**, that took place or was committed after you acquired or formed the organization.

c.  SUBSIDIARIES- Any subsidiary you wholly own, either directly or indirectly, at the inception of our policy.

d.  REAL ESTATE MANAGERS - Any person or any organization while acting as your real estate manager.

e.  CUSTODIANS- Any person or organization having proper temporary custody of your property if you die, but only:

    (1) With respect to liability arising out of the maintenance or use of that property; and

    (2) Until your legal representative has been appointed.

f.  LEGAL REPRESENTATIVES Your legal representative if you die, but only with respect to their duties as such.

g.  Your **Volunteer Workers** but only while performing duties related to the conduct of your business, or your **Employees**, other than:

    (1) Your **Executive Officers** (if you are an organization other than a partnership, joint venture or limited liability company); or

    (2) Your managers (if you are a limited liability company);

are **Insureds**, but only for acts within the scope of their employment by you or while performing duties related to the conduct of your business.

However, none of these **Employees** or **Volunteer Workers** are **Insureds** for injury:

    (a) To you;

    (b) To your partners or members (if you are a partnership or joint venture);

    (c) To your members (if you are a limited liability company);

    (d) To a co-**Employee** while in the course of his or her employment or performing duties related to the conduct of your business;

    (e) To your other **Volunteer Workers** while performing duties related to the conduct of your business;

    (f) To the spouse, child, parent, brother or sister of that co-**Employee** or **Volunteer Worker** as a consequence of subsections (a) through (e) above;

    (g) For which there is any obligation to share damages with or repay someone else who must pay damages because of the injury described in subsections (a) through (f) above; or

    (h) Arising out of his or her providing or failing to provide professional health care services.

2. The following persons and organizations are not **Insureds** under Coverage B:

No person or organization is an **Insured** with respect to the conduct of any current, past or newly acquired or formed:

    a. Partnership;

    b. Joint venture; or

    c. Limited liability company;

that is not shown as a **Named Insured** in our Declarations.

# E. COVERAGE B - LIMITS OF INSURANCE

1. The Limits of Insurance shown in the Declarations and the terms below fix the most we will pay regardless of the number of:

    a. Coverages provided by this policy;

    b. **Insureds**;

    c. Claims made or **Suits** brought; or

    d. Persons or organizations making claims or bringing **Suits**.

2. OCCURRENCE LIMIT - The "each occurrence" limit shown in our Declarations is the most we will pay under Coverages A and B combined, for the sum of damages and **Covered Pollution Cost or Expense** arising out of any one **Occurrence**.

Any amount we pay for damages or **Covered Pollution Cost of Expense** arising out of an **Occurrence** will reduce or exhaust the amount of our applicable aggregate Limit of Insurance available for payment of damages or **Covered Pollution Cost or Expense** arising out of any other **Occurrence**.

3. AGGREGATE LIMIT - The Limit of Insurance shown in our Declarations as "aggregate" is the most we will pay under Coverage B, and applies separately for each of the following:

    a. GENERAL AGGREGATE - Our aggregate limit is the most we will pay for the sum of damages except for damages under subsections b. and c. below.

    b. PRODUCTS AND COMPLETED OPERATIONS AGGREGATE - Our aggregate limit is the most we will pay for damages included in the **Products-Completed Operations Hazard**.

    c. OCCUPATIONAL DISEASE AGGREGATE - Our aggregate limit is the most we will pay for damages arising out of injury by disease to your officers or **Employees**.

4. POLICY PERIOD EXTENSIONS - The Limits of Insurance of this policy apply separately to each consecutive annual period and to any remaining period of less than twelve (12) months, starting with the beginning of the Policy Period shown in the Declarations. However, if we extend our Policy Period after this policy is issued, we will consider the additional period as part of the last preceding period for purposes of determining the Limits of Insurance.

5. SAME BASIS DEFENSE EXPENSES - If the limits of Insurance of any **Primary Insurance** or **Other Insurance** are reduced by defense expenses by the terms of that policy then any

defense expense payments we make to defend any **Insured** will reduce our applicable Limits of Insurance in the same manner.

## SECTION III. SUPPLEMENTARY PAYMENTS

When we have the duty under this policy to defend any **Insured** against any **Suit**, we will pay the following expenses in addition to our Limit of Insurance to the extent that they are not covered by **Primary Insurance** or **Other Insurance** by the terms of that insurance:

1. Costs taxed against any **Insured** in the **Suit**.

2. Up to $2000 for cost of bail bonds required. We do not have to furnish these bonds.

3. The cost of bonds to release attachments, but only for bond amounts within our applicable Limit of Insurance. We do not have to furnish these bonds.

4. Reasonable expenses incurred by any **Insured** when we request the **Insured** to assist us in the investigation of the claim or defense of the **Suit**. This includes actual loss of earnings up to $500 a day, because of time off from work.

5. Prejudgment interest awarded against any **Insured** on that part of the judgment we pay. If we make an offer to pay the applicable Limit of Insurance we will not pay any prejudgment interest based on that period of time after the offer.

6. All interest on the full amount of any judgment that accrues after entry of the judgment and before we have paid, offered to pay, or deposited in court the part of the judgment that is within our applicable Limit of Insurance.

## SECTION IV. CONDITIONS

A. **APPEALS** - If any **Primary Insurer** elects not to appeal a judgment in excess of the amount of the **Primary Insurance** or **Other Insurance**, we may elect to appeal. If we appeal, we will pay the expenses of such appeal. Such payments will not reduce our Limits of Insurance.

B. **BANKRUPTCY**

1. Bankruptcy or insolvency of any **Insured** or **Insured's** estate does not relieve us of our obligations under this policy.

2. If any **Primary Insurer** becomes bankrupt or insolvent, this policy:

   a. Does not replace such **Primary Insurance**; and

   b. Applies as though such **Primary Insurance** were available and collectible.

C. **CANCELLATION**

1. The **First Named Insured** may cancel this policy by mailing or delivering advance written notice to us, or the agent or broker of record. The Policy Period will end on the effective date requested.

2. We may cancel this policy by mailing by first class or certified mail to the **First Named Insured** and to the agent or broker of record, at their last addresses known to us, written notice of cancellation stating the reason for cancellation, at least:

5400 10-03

a.  Ten (10) days before the effective date of cancellation if we cancel for nonpayment of premium; or

b.  Ninety (90) days before the effective date of cancellation if we cancel for any other reason.

3.  Notice of cancellation will state the effective date of cancellation.  The Policy Period will end on the date of cancellation.

4.  If this policy is cancelled, we will send the **First Named Insured** any premium refund due.

a.  If we cancel, the refund will be pro rata unearned premium.

b.  If the **First Named Insured** cancels, the refund may be less than pro rata.

The cancellation will be effective even if we have not made or offered a refund.

5.  A post office certificate of mailing or a certified mail receipt will be sufficient proof of mailing of notice.

**D.  CHANGES** - The **First Named Insured** is authorized to make changes in the terms of this policy with our consent. This policy's terms can be amended or waived only by a written endorsement issued by us and made a part of this policy.

**E.  CONFORMITY WITH LAWS** - Any terms of this policy which are in conflict with the laws of the state or Canadian province where this policy is issued are amended to conform to such laws.

**F.  DUTIES OF INSUREDS IN THE EVENT OF OCCURRENCE, CLAIM OR SUIT**

You must see to it that:

1.  We are notified as soon as practicable:

a.  Of any **Occurrence** which may result in a claim under this policy, when the **Occurrence** is known to:

(1)  You, if you are an individual;

(2)  Your partner, if you are a partnership;

(3)  Your member, if you are a joint venture;

(4)  Your member or manager, if you are a limited liability company; or

(5)  Your officer or insurance manager, if you are an organization other than a partnership or joint venture; and

b.  If a claim is made or **Suit** is brought against any **Insured**.

2.  **Insureds**:

a.  Cooperate with us in the investigation or settlement of any claim, or defense of any **Insured** against any **Suit**;

b.  Enforce any right, upon our request, against any person or organization which may be liable to any **Insured** because of injury or damage to which this policy applies; and

c.  Make no admission of liability, incur no expense other than first aid, and assume no obligation, without our consent.

3. In jurisdictions in which we are prevented from investigating, defending or settling a claim, or defending any **Insured** against any **Suit**, you must make or cause to be made such investigation, defense or settlement as may be reasonably necessary. However, settlement requires our prior written authorization. Also, you must see to it that **Insureds** continue to comply with their duty to cooperate in the defense.

## G. MAINTENANCE OF PRIMARY INSURANCE

While this policy is in effect you agree:

1. To maintain **Primary Insurance** in full force, except for the reduction of limits of insurance due to the payment of judgments or settlements;

2. The terms and conditions of **Primary Insurance** will not materially change; and

3. Renewals or replacements of **Primary Insurance** will not materially change from the expiring **Primary Insurance**.

If you fail to comply with the above this policy shall apply as if **Primary Insurance** had been so maintained.

## H. PAYMENT OF LOSS UNDER THIS POLICY - This policy will not apply until the **Insured** or the **Primary Insurer** is obligated to pay the full amount of the **Primary Insurance** limits of insurance. When the amount of judgment or settlement has finally been determined, we will promptly pay on behalf of the **Insured** the amount of damages which falls within the terms of this policy.

## I. PREMIUM

1. The **First Named Insured**:

   a. Is responsible for the payment of all premiums; and

   b. Will be the payee for any return premiums.

2. The Advance Premium for this policy is shown in the Declarations. It is not subject to adjustment unless the Basis of Premium shown in the Declarations is other than: "flat charge".

3. If the Advance Premium is subject to adjustment, the earned premium will be determined at the end of our Policy Period. If the earned premium is:

   a. More than the Advance Premium, the **First Named Insured** will pay the excess to us; or

   b. Less than the Advance Premium, we will return to the **First Named Insured** the unearned portion. However, the earned premium is subject to the Annual Minimum Premium shown in our Declarations for each twelve (12) months of our Policy Period.

## J. TITLES OR CAPTIONS - The titles or captions used in this policy are solely for convenience or reference. They do not affect the provisions to which they relate.

## K. TRANSFER OF YOUR RIGHTS AND DUTIES UNDER THIS POLICY - Your rights and duties under this policy may not be transferred without our written consent. If you die, your rights and duties are transferred to your legal representative but only while they are acting within the scope of their duties as such. Until one is appointed, anyone having proper temporary custody of your property will have your rights and duties with respect to that property.

## L.  SUBROGATION

1.  If any **Insured** has rights to recover all or part of any payment we make under this policy, those rights are transferred to us. The **Insured** must do nothing after loss to impair them. At our request, the **Insured** will bring **Suit** or transfer those rights to us and help us enforce them.

2.  Any recoveries shall be distributed as follows:

    a.  First, we shall be entitled to recover to the extent of our payment; and

    b.  Next, any remaining amounts shall be paid to the **Primary Insurers** or any other party to the extent of their payment.

    c.  The expenses of the recovery will be distributed in proportion to the share of each party's recovery. But, if we conduct the recovery proceedings by ourselves:

        (1) We will pay all expenses; and

        (2) If we make a recovery, we will be reimbursed in full from the recovery for our expenses before the recovery is distributed.

## M.  OTHER INSURANCE - If there is any **Other Insurance** available to any **Insured**, this policy applies excess of and does not contribute with such **Other Insurance**. However:

1.  At your option, our policy will apply before **Other Insurance** applies when you agree in a written **Insured Contract** prior to the time of an **Occurrence** that such insurance as is afforded by this policy will apply in that manner.

2.  This does not apply if the **Other Insurance** is specifically written to be excess over this policy.

## N.  SEPARATION OF INSUREDS - Except with respect to the Limits of Insurance and any rights or duties specifically assigned to the **First Named Insured**, this insurance applies:

1.  As if each **Named Insured** were the only **Named Insured**; and

2.  Separately to each **Insured** against whom claim is made or **Suit** is brought.

## O.  INSPECTION AND AUDIT

1.  We have the right but not the duty to:

    a.  Make inspections and surveys at any time;

    b.  Give you reports on the conditions we find; and

    c.  Recommend changes.

2.  Any inspections, surveys, reports or recommendations relate only to insurability and the premiums to be charged. We do not:

    a.  Make safety inspections;

    b.  Undertake to perform the duty of any person or organization to provide for the health or safety of workers or the public; or

    c.  Warrant that conditions are:

        (1) Safe or healthful; or

    (2) Comply with laws, regulations, codes or standards.

3. This condition applies:

    a. To us; and

    b. To any rating, advisory, rate service or similar organization, which makes insurance inspections, surveys, reports or recommendations.

4. We may examine and audit your books and records as they relate to this policy:

    a. At any time during our Policy Period; and

    b. Up to one hundred eighty (180) days afterward.

**P. UNINTENTIONAL FAILURE TO DISCLOSE** - If you unintentionally fail to disclose to us all of:

1. **Your Products;**

2. **Your Work**; or

3. Property owned or used by you;

which exist at the inception date of this policy, we will not deny coverage under this policy because of such failure.

**Q. WAIVER OF SUBROGATION SAME AS PRIMARY** - If you and the **Primary Insurer**, prior to the time of an **Occurrence**, waive any right of recovery against a specific person or organization for injury or damage, we will also waive any rights we may have against such person or organization.

## SECTION V. NUCLEAR ENERGY LIABILITY EXCLUSION

**A.** The policy does not apply:

1. Under any coverage, to injury, sickness, disease, death or destruction:

    a. With respect to which any **Insured** under this policy is also an insured under a nuclear energy liability policy issued by:

        (1) Nuclear Energy Liability Insurance Association;

        (2) Mutual Atomic Energy Liability Underwriters; or

        (3) Nuclear Insurance Association of Canada;

    or would be insured under any such policy but for its termination upon exhaustion of its limit of liability; or

    b. Resulting from the "Hazardous Properties" of "Nuclear Material" and with respect to which:

        (1) Any person or organization is required to maintain financial protection pursuant to the Atomic Energy Act of 1954, or any law amendatory thereof; or

        (2) Any **Insured** is, or had this policy not been issued would be, entitled to indemnity from the United States of America, or any agency thereof, under any agreement entered into by the United States of America, or any agency thereof, with any person or organization.

2. Under any liability coverage, to injury, sickness, disease, death or destruction resulting from the "Hazardous Properties" of "Nuclear Material", if:

    a. The "Nuclear Material":

        (1) Is at any "Nuclear Facility" owned by, or operated by or on behalf of, any **Insured**, or

        (2) Has been discharged or dispersed therefrom;

    b. The "Nuclear Material" is contained in "Spent Fuel" or "Waste" at any time possessed, handled, used, processed, stored, transported or disposed of, by or on behalf of any **Insured**; or

    c. The injury, sickness, disease, death or destruction arises out of the furnishing by any **Insured** of services, materials, parts or equipment in connection with the planning, construction, maintenance, operation or use of any "Nuclear Facility". But if such facility is located within the United States of America, its territories or possessions or Canada, subsection c. applies only to injury to or destruction of property at such "Nuclear Facility".

**B.** As used in this exclusion:

1. "Hazardous Properties" includes radioactive, toxic or explosive properties.

2. "Nuclear Material" means "Source Material", "Special Nuclear Material" or "By-Product Material".

3. "Source Material", "Special Nuclear Material", and "By-Product Material" have the meaning given them in the Atomic Energy Act of 1954 or in any law amendatory thereof.

4. "Spent Fuel" means any fuel element or fuel component, solid or liquid, which has been used or exposed to radiation in a "Nuclear Reactor".

5. "Waste" means any material which:

    a. Contains "By-Product Material" other than the tailings or wastes produced by the extraction or concentration of uranium or thorium, from any ore processed primarily for its Source Material content; and

    b. Results from the operation by any person or organization of any "Nuclear Facility" included under a. and b. of the definition of "Nuclear Facility".

6. "Nuclear Facility" means:

    a. Any "Nuclear Reactor";

    b. Any equipment or device designed or used for:

        (1) Separating the isotopes of uranium or plutonium;

        (2) Processing or utilizing "Spent Fuel"; or

        (3) Handling, processing or packaging "Waste";

    c. Any equipment or device used for processing, fabricating or alloying of "Special Nuclear Material" if, at any time, the total amount of such material in the custody of any **Insured** at the premises where such equipment or device is located consists of or contains more than 25 grams of:

        (1) Plutonium; or

(2) Uranium 233; or

any combination thereof, or more than 250 grams of uranium 235;

d. Any structure, basin, excavation, premises or place, prepared or used for the storage or disposal of "Waste";

and includes:

a. The site on which any of the foregoing is located;

b. All operations conducted on such site; and

c. All premises used for such operations.

7. "Nuclear Reactor" means any apparatus designed or used to:

a. Sustain nuclear fission in a self-supporting chain reaction; or

b. Contain a critical mass of fissionable material.

8. With respect to injury to or destruction of property, the words "injury" or "destruction" include all forms of radioactive contamination of property.

---

## SECTION VI. DEFINITIONS

**A. ADVERTISEMENT** under Coverage B, means a notice that is broadcast or published to the general public or specific market segments about your goods, products or services for the purpose of attracting customers and supporters. For the purposes of this definition:

1. Notices that are broadcast or published include material placed on the Internet or on similar electronic means of communication; and

2. Regarding web-sites, only that part of a web-site that relates to your goods, products or services for the purposes of attracting customers or supporters is considered an **Advertisement**.

**B. ASBESTOS** under Coverages A and B, includes but is not limited to: asbestos, asbestos products, asbestos fibers, asbestos dust, and asbestos contained in products or materials.

**C. AUTO** under Coverage B, means a land motor vehicle, trailer, or semitrailer designed for travel on public roads, including any attached machinery or equipment. But **Auto** does not include **Mobile Equipment.**

**D. BODILY INJURY** under Coverage B, means bodily injury, sickness or disease sustained by a person including death or mental anguish resulting from any of these at any time. Mental anguish means any type of mental or emotional illness or disease.

**E. COVERED POLLUTION COST OR EXPENSE** under Coverage A, means any cost or expense arising out of any:

1. Request, demand, order or statutory or regulatory requirement; or

2. Claim or **Suit** by or on behalf of a governmental authority;

demanding that the **Insured** or others test for, monitor, clean up, remove, contain, treat, detoxify or neutralize, or in any way respond to, or assess the effects of **Pollutants.**

**Covered Pollution Cost or Expense** does not include any cost or expense arising out of the actual, alleged or threatened discharge, dispersal, seepage, migration, release or escape of **Pollutants**:

1. That are, or that are contained in any property that is:

   a. Being transported or towed by, handled, or handled for movement into, onto or from, any **Auto** covered by this policy;

   b. Otherwise in the course of transit by or on behalf of any **Insured**;

   c. Being stored, disposed of, treated or processed in or upon any **Auto** covered by this policy;

2. Before the **Pollutants**, or any property in which the **Pollutants** are contained, are moved from the place where they are accepted by any **Insured** for movement into or onto any **Auto** covered by this policy; or

3. After the **Pollutants**, or any property in which the **Pollutants** are contained, are moved from any **Auto** covered by this policy to the place where they are finally delivered, disposed of or abandoned by any **Insured**.

Subsection 1. above does not apply to fuels, lubricants, fluids, exhaust gases or other similar **Pollutants**, that are needed for or result from the normal electrical, hydraulic or mechanical functioning of any **Auto** covered by this policy, or its parts, if:

a. The **Pollutants** escape, seep, migrate, or are discharged, dispersed or released directly from an **Auto** part designed by its manufacturer to hold, store, receive or dispose of such **Pollutants**; and

b. The **Bodily Injury, Property Damage** or **Covered Pollution Cost or Expense** does not arise out of the operation of any equipment listed in subsections 6.b. or c. of the definition of **Mobile Equipment**.

Subsections 2. and 3. above do not apply to **Occurrences** that occur away from premises owned by or rented to any **Insured** with respect to **Pollutants** not in or upon any **Auto** covered by this policy if:

a. The **Pollutants** or any property in which the **Pollutants** are contained are upset, overturned or damaged as a result of the maintenance or use of any **Auto** covered by this policy; and

b. The discharge, dispersal, seepage, migration, release or escape of the **Pollutants** is caused directly by such upset, overturn or damage.

**F.  FIRST NAMED INSURED** under Coverages A and B, means the person or organization shown first in the Named Insured section of our Declarations.

**G.  HOSTILE FIRE** under Coverages A and B, means one which becomes uncontrollable or breaks out from where it was intended to be.

**H.  IMPAIRED PROPERTY** under Coverage B, means tangible property, other than **Your Product** or **Your Work**, that cannot be used or is less useful because:

1. It incorporates **Your Product** or **Your Work** that is known or thought to be defective, deficient, inadequate or dangerous; or

2. You have failed to fulfill the terms of a contract or agreement;

if such property can be restored to use by:

1. The repair, replacement, adjustment or removal of **Your Product** or **Your Work**; or

2. Your fulfilling the terms of the contract or agreement.

**I. INSURED CONTRACT** under Coverage B, means:

1. A contract for a lease of premises.  However, that portion of the contract for a lease of premises that indemnifies any person or organization for damage by fire to premises while rented to you or temporarily occupied by you with permission of the owner is not an **Insured Contract**;

2. A sidetrack agreement;

3. Any easement or license agreement, except in connection with construction or demolition operations on or within 50 feet of a railroad;

4. An obligation, as required by ordinance, to indemnify a municipality, except in connection with work for a municipality;

5. An elevator maintenance agreement;

6. That part of any contract or agreement pertaining to your business (including an indemnification of a municipality in connection with work performed for a municipality) under which you assume the tort liability of another to pay for **Bodily Injury, Personal and Advertising Injury** or **Property Damage** to a third person or organization. "Tort liability" means a liability that would be imposed by law in the absence of any contract or agreement.

   This subsection 6. does not include that part of any contract or agreement:

   a. That indemnifies a railroad for liability arising out of construction or demolition operations, within 50 feet of any railroad property and affecting any railroad bridge or trestle, tracks, roadbeds, tunnel, underpass or crossing;

   b. That indemnifies an architect, engineer or surveyor for injury or damage arising out of:

      (1) Preparing, approving, or failing to prepare or approve, maps, shop drawings, opinions, reports surveys, field orders, change orders or drawings and specifications; or

      (2) Giving directions or instructions, or failing to give them, if that is the primary cause of the injury or damage; or

   c. Under which the **Insured**, if an architect, engineer or surveyor, assumes liability for an injury or damage arising out of the **Insured's** rendering or failure to render professional services, including those listed in b. above and supervisory, inspection, architectural or engineering activities.

**J. MOBILE EQUIPMENT** under Coverages A and B, means any of the following types of land vehicles, including any attached machinery or equipment:

1. Bulldozers, farm machinery, forklifts and other vehicles designed for use principally off public roads;

2. Vehicles maintained for use solely on or next to premises you own or rent;

3. Vehicles that travel on crawler treads;

4. Vehicles, whether self-propelled or not, maintained primarily to provide mobility to permanently mounted;

    a.  Power cranes, shovels, loaders, diggers or drills; or

    b.  Road construction or resurfacing equipment such as graders, scrapers or rollers;

5.  Vehicles not described in subsections 1., 2., 3. or 4. above that are not self-propelled and are maintained primarily to provide mobility to permanently attached equipment of the following types:

    a.  Air compressors, pumps and generators, including spraying, welding, building cleaning, geophysical exploration, lighting and well servicing equipment; or

    b.  Cherry pickers and similar devices used to raise or lower workers.

6.  Vehicles not described in subsections 1., 2., 3. or 4. above maintained primarily for purposes other than the transportation of persons or cargo. However, self-propelled vehicles with the following types of permanently attached equipment are not **Mobile Equipment** but will be considered **Autos**:

    a.  Equipment designed primarily for:

        (1)  Snow removal;

        (2)  Road maintenance, but not construction or resurfacing; or

        (3)  Street cleaning;

    b.  Cherry pickers and similar devices mounted on automobile or truck chassis and used to raise or lower workers; and

    c.  Air compressors, pumps and generators, including spraying, welding, building cleaning, geophysical exploration, lighting or well servicing equipment.

K.  **NAMED INSURED** under Coverages A and B, means any person or organization shown in the Named Insured section of our Declarations.

L.  **OCCURRENCE:**

1.  Under Coverage A, has the same meaning as has the term "occurrence" contained in **Primary Insurance**. But with respect to personal and advertising injury as defined in **Primary Policies**, the term means a personal and advertising injury offense.

2.  Under Coverage B, means an accident, including continuous or repeated exposure to substantially the same general harmful conditions. With respect to **Personal and Advertising Injury**, the term means an offense which causes such injury.

M.  **OTHER INSURANCE** under Coverages A and B, means insurance that is available to any **Insured** and covers damage to which this policy applies, other than:

1.  **Primary Insurance**; or

2.  Insurance that is specifically purchased by you to be excess of the insurance afforded by this policy.

N.  **PERSONAL AND ADVERTISING INJURY** under Coverage B, means injury, including consequential **Bodily Injury**, arising out of one or more of the following offenses:

1.  False arrest, detention or imprisonment;

2.  Malicious prosecution or abuse of process;

3.  The wrongful eviction from, wrongful entry into, or invasion of the right of private occupancy of a room, dwelling or premises that the person occupies by or on behalf of its owner, landlord or lessor;

4.  Oral or written publication, in any manner, of material that:

   a.  Slanders or libels a person or organization;

   b.  Disparages a person's or organization's goods, products or services; or

   c.  Violates a person's right of privacy;

5.  The use of another's advertising idea in your **Advertisement;**

6.  Infringing upon another's copyright, trade dress or slogan in your **Advertisement;** or

7.  "Discrimination" when based solely on either disparate impact or vicarious liability (unless insurance thereof is prohibited by law). As used in this definition N, the term "discrimination" means the unlawful treatment of individuals based on race, color, religion, gender, age, or national origin.

O.  **POLLUTANTS** under Coverages A and B, means any solid, liquid, gaseous or thermal irritant or contaminant, including smoke, vapor, soot, fumes, acids, alkalis, chemicals, and waste. Waste includes materials to be recycled, reconditioned or reclaimed.

P.  **PRIMARY INSURER** under Coverages A and B, means the insurer of the **Primary Insurance** or **Other Insurance** policies.

Q.  **PRIMARY POLICY, PRIMARY POLICIES** or **PRIMARY INSURANCE** under Coverage A and B, means the policy or policies of insurance shown in our Schedule of Primary Insurance.

R.  **PRODUCTS-COMPLETED OPERATIONS HAZARD** under Coverage B, includes all **Bodily Injury** and **Property Damage** occurring away from premises you own or rent and arising out of **Your Product** or **Your Work** except:

1.  Products that are still in your physical possession; or

2.  Work that has not yet been completed or abandoned.

**Your Work** will be deemed completed at the earliest of the following times:

1.  When all of the work called for in your contract has been completed;

2.  When all of the work to be done at the site has been completed if your contract calls for work at more than one site; or

3.  When that part of the work done at a job site has been put to its intended use by any person or organization other than another contractor or subcontractor working on the same project.

Work that may need service, maintenance, correction, repair or replacement, but which is otherwise complete, will be treated as completed.

S.  **PROPERTY DAMAGE** under Coverage B, means:

1.  Physical injury to tangible property, including all resulting loss of use of that property. All such loss of use shall be deemed to occur at the time of the physical injury that caused it; or

2.  Loss of use of tangible property that is not physically injured. All such loss of use shall be deemed to occur at the time of the **Occurrence** that caused it.

5400 10-03

Page 26 of 28

For the purposes of this insurance, "electronic data" is not tangible property.

As used in this definition, "electronic data" means information, facts or programs stored as or on, created or used on, or transmitted to or from computer software, including systems and applications software, hard or floppy disks, CD-ROMS, tapes, drives, cells, data processing devices or any other media which are used with electronically controlled equipment.

**T.  SUIT** under Coverages A and B, means a civil proceeding in which damages insured by this policy are alleged.  The term includes:

1.  An arbitration proceeding in which such damages are claimed and to which any **Insured** must submit or does submit with our consent; or

2.  Any other alternative dispute resolution proceeding in which such damages are claimed and to which any **Insured** submits with our consent.

**U.  YOUR PRODUCT** under Coverage B, means:

1.  Any goods or products, other than real property, manufactured, sold, handled, distributed or disposed of by:

   a.  You;

   b.  Others trading under your name; or

   c.  A person or organization whose business or assets you have acquired; and

2.  Containers (other than vehicles), materials, parts or equipment furnished in connection with such goods or products.

**Your Product** includes:

1.  Warranties or representations made at any time as respects the fitness, quality, durability, performance or use of **Your Product**; and

2.  The providing of or failure to provide warnings or instructions.

**Your Product** does not include vending machines or any other property rented to or located for the use of others but not sold.

**V.  YOUR WORK** under Coverage B means:

1.  Work or operations performed by you or on your behalf; and

2.  Materials, parts or equipment furnished in connection with such work or operations.

**Your Work** includes:

1.  Warranties or representations made at any time as respects the fitness, quality, durability, performance or use of **Your Work**; and

2.  The providing of or failure to provide warnings or instructions.

**W.  EMPLOYEE** under Coverage B, includes a **Leased Worker**.  **Employee** does not include a **Temporary Worker**.

**X.  EXECUTIVE OFFICER** under Coverage B, means a person holding any of the officer positions created by your charter, constitution, by-laws or any other similar governing document.

**Y.  LEASED WORKER** under Coverage B, means a person leased to you by a labor leasing firm under an agreement between you and the labor leasing firm, to perform duties related to the conduct of your business.  **Leased Worker** does not include a **Temporary Worker**.

**Z.  TEMPORARY WORKER** under Coverage B, means a person who is furnished to you to substitute for a permanent **Employee** on leave or to meet seasonal or short-term workload conditions.

**AA. VOLUNTEER WORKER** under Coverage B, means a person who is not your **Employee**, and who donates his or her work and acts at the direction of and within the scope of duties determined by you, and is not paid a fee, salary or other compensation by you or anyone else for their work performed for you.

To show that we agree with the terms of this policy, we have had it signed by our President and Secretary.  But where countersignature is required by law, it shall not bind us unless it has been countersigned on the Declarations Page by one of our authorized agents.

_____
Secretary

_____
President